816 F.2d 683
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glenn R. LEWIS (86-5377) and Hoover Lindsey (86-5379)
Defendants-Appellants.
 Nos. 86-5377, 86-5379.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1987.
 
 Before KEITH, KRUPANSKY and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants-appellants Hoover Lindsey (Lindsey) and Glen Lewis (Lewis) appealed their convictions of numerous counts of mail fraud and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. Sec. 371 and 1341-42.
 
 
 2
 The record disclosed the following facts. Lindsey, Lewis, Danny Vincent and Leon Vincent were indicted in the Western District of Kentucky on 35 substantive counts of mail fraud and one count of conspiracy to commit mail fraud. Danny Vincent pled guilty and became the government's key witness in the joint trial which began on February 3, 1986 and lasted until February 28, 1986.
 
 
 3
 The charges involved a scheme to fraudulently "adjust" tires to exact monetary rebates from the manufacturer.[1] Lindsey General Tire Service, Inc., a corporation wholly owned by Lindsey, operated a tire dealership which sold "giant tires" manufactured by General Tire Corporation (GTC) for use on heavy equipment. The purchase price of tires that had failed because of a design defect or accelerated wear was "adjusted" by GTC. Lewis, a representative of GTC assigned to the geographical area in which Lindsey General Tire was located, inspected defective tires and prepared adjustment reports for GTC. The reports incorporated the dealer's invoice listing the purchase price of a new tire less the adjustment credit allowed for the defective tire. Lewis was required to identify each tire adjusted by cutting the serial number from it and forwarding it to GTC with each report. Upon receipt of a report, GTC would issue a credit to the dealer who sold the tire, who in turn was required to credit the customer's account or rebate the cash for the adjusted amount.
 
 
 4
 Danny Vincent's participation in the scheme was to locate GTC manufactured discarded giant tires in junk yards, salvage yards, etc., that had been sold within the preceeding five years, which he identified from a confidential GTC list of coded serial numbers supplied by Lewis. The discarded tires were taken to Lindsey General Tire or Simpson County Tire, another tire dealership in the area operated by John Farley (Farley), where they were subsequently adjusted by Lewis who removed the serial numbers from the tires for attachment to his adjustment report to GTC.
 
 
 5
 Dennis Bull, Lindsey's son-in-law who was employed by Lindsey General Tire, prepared fraudulent invoices that reflected ficticious tire sales to customers which were attached to Lewis' fraudulent adjustment reports that were forwarded to GTC in Akron, Ohio. GTC paid Lindsey General Tire or Simpson County Tire from $1,000 to $3,000 for each tire depending upon its adjusted fictitious depreciated value. Lewis, Danny Vincent, Leon Vincent, Lindsey General Tire and/or Simpson County Tire all received a pro rata share from each GTC rebate. GTC calculated its losses from the fraudulent credits resulting from the conspiracy at $179,342.42.
 
 
 6
 To support each of the substantive counts, the prosecution introduced into evidence the adjustment reports and respective GTC credit memos for each of the fraudulent adjustments. Several of the "customers" named on the fraudulent invoices testified that they had not signed or authorized their signature which appeared on the controversial invoices or received any of the rebates that may have resulted from the ficticious transaction.
 
 
 7
 The jury convicted each defendant of the conspiracy count and of numerous substantive counts. Lewis and Lindsey initiated separate appeals which were consolidated for consideration and disposition.
 
 
 8
 Lindsey argued initially that the evidence was insufficient to support his conviction of either the conspiracy count or of the underlying 18 substantive counts of the indictment for which he was convicted. A court reviewing a criminal conviction must determine if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In order to support a conviction for conspiracy, the government must prove beyond a reasonable doubt that a conspiracy existed and that "each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Warner, 690 F.2d 545, 549 (6th Clr. 1982)(citation omitted). See also United States v. Richardson, 596 F.2d 157, 162 (6th Cir. 1979).
 
 
 9
 Lindsey did not challenge the existence of a conspiracy, but rather challenged only the sufficiency of the evidence that implicated him in it. There was substantial evidence, however, to prove Lindsey's participation in the objectives of the conspiracy. He was the owner of the dealership which received the payments from GTC from the scheme. Bull testified that he had submitted adjustment documents evidencing fraudulent adjustments directly to Lindsey. Danny Vincent testified that he overheard Lindsey and Lewis arguing over allocating the receipts derived from the scheme. Danny Vincent further testified that on one occasion Lindsey telephoned him with instructions to deliver two used tires to Lindsey General Tire to be fraudulently adjusted by Lewis.
 
 
 10
 In considering the substantive counts, this court is reminded that "[t]he essential elements of mail fraud... are (1) a scheme to defraud and (2) the mailing of material for the purpose of executing the scheme." ,United States v. Stull, 743 F.2d 439, 441-42 (6th Cir. 1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). The record disclosed that the prosecution introduced into evidence each fraudulent invoice Lindsey General Tire had submitted to GTC. It also introduced evidence documenting GTC's authorization of credit rebates which resulted from the scheme to Lindsey General Tire which it retained as income. In addition, much of the same evidence which linked Lindsey to the conspiracy also supported his conviction on the substantive counts.[2]
 
 
 11
 Lindsey next asserted that the district court abused its discretion in not granting his motion for severance.
 
 
 12
 [I]t is clear that a motion for severance of defendants is committed to the sound discretion of the trial court. A general rule in conspiracy cases is that persons jointly indicted should be tried together. This is particularly true where the offenses charged may be established against all of the defendants by the same evidence. The appellants, therefore, have the burden of showing that they were prejudiced by the court's denial of the severance motion.
 
 
 13
 United States v. Robinson, 707 F.2d 872, 879 (6th Cir. 1983)(citations omitted). "Even if defendant may establish some potential jury confusion, this must be balanced against society's need for speedy and effective trials." United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir. 1985)(citations omitted), cert. denied, 106 S.Ct. 826, 88 L.Ed.2d 798, cert. denied, 106 S.Ct. 828, 88 L.Ed.2d 800, cert. denied, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986). "A defendant has no right to a separate trial merely because his likelihood of acquittal would be greater if severance were granted." Id. at 1526 (citation omitted). Because "the jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately," United States v. Thomas 728 F.2d 313, 319 (6th Cir. 1984)(citations omitted), and because Lindsey failed to demonstrate that the jury was unable to do so, this court finds no abuse of discretion in the denial of the motion for severance.
 
 
 14
 Lindsey also argued that the district court erred in denying his motion for a continuance. He had moved for a continuance on the morning of the first day of trial after the government had provided defense counsel with a summary of the anticipated testimony of its witness Frank Herema (Herema), a GTC audit manager. The summary indicated that Herema intended to document adjustments on at least fifty tires not included in the indictment, and that the government would seek to introduce those documents as evidence of similar acts. Although the documents were in Lindsey's possession, the government had not communicated its intent to use them as evidence in its case in chief until the morning of the first day of trial giving rise to Lindsey's charge that this "last minute" disclosure violated the discovery provisions of Fed.R.Crim.P. 16(a)(1)(C)[3] and the district court's earlier discovery order,[4] and prohibited him from adequately preparing for his defense.
 
 
 15
 Precedent in this circuit has concluded that:
 
 
 16
 [t]he denial of a motion fo( a continuance will not be reversed absent a clear abuse of discretion. Denial amounts to a constitutional violation only if there is an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay." To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense.
 
 
 17
 Gallo, 763 F.2d at 1523 (quoting United States v. Mitchell, 744 F.2d 701, 704 (9th Cir. 1984)).
 
 
 18
 This assignment of error is misplaced. The documents which the government proffered were in Lindsey's possession so he was fully aware of their content and implications. Furthermore, the district court prohibited use of the documents in the government's case in chief, and they were withheld by the prosecution until its cross-examination of Lewis on February 14, 1986, a full 13 days after the prosecution indicated that it intended to use them.
 
 
 19
 As his next assignment of error, Lindsey asserted that the district court, over objection, improperly permitted the government to present Farley, owner and operator of Simpson County Tire, as a witness when it was aware that he would invoke his Fifth Amendment privilege against self incrimination in the jury's presence. Farley, Lewis, and Danny and Leon Vincent, and Lindsey engaged in the same common conspiracy to fradulently exact rebates from GTC using both Simpson County Tire and Lindsey Tire as instruments to promote the scheme. During a discussion outside the presence of the jury, the prosecution informed the district court that Farley possessed information concerning the procedural operation of the conspiracy and the contribution of each of the various participants in futhering the scheme. Farley's attorney advised the court that his client intended to invoke his Fifth Amendment privilege, which Farley proceeded to do upon voir dire examination. The court, nevertheless, overruled defense counsel's objection and permitted Farley to appear as a witness, explaining its decision in the following colloquy:
 
 
 20
 THE COURT: Well, ... the U.S. can, if it shows some prejudice by failing to present somebody, if they want to show that they are bringing in people that know about the facts of the case, they may do so. Otherwise they [the jury] may draw an inference and wonder what happened to Mr. Farley or somebody else.
 
 
 21
 After disclosing his name and place of residence, Farley in the presence of the jury invoked his Fifth Amendment privilege in response to a limited interrogation concerning his association with Simpson County Tire and certain tire invoices. Defense counsel proffered no questions, and the court immediately cautioned the jury:
 
 
 22
 THE COURT: Now, ladies and gentlement of the jury, let me advise you that since the invocation of the Fifth Amendment under the Constitution is a personal right, you will not take the invocation of the Fifth Amendment by this witness in any fashion with respect to the guilt or innocence of any defendant in this case.
 
 
 23
 In a similar case, this circuit has held that:
 
 
 24
 Government counsel need not refrain from calling a witness whose attorney appears in court and advises court and counsel that the witness will claim his privilege and will not testify. However, to call such a witness, counsel must have an honest belief that the witness has information which is pertinent to the issues in the case and which is admissible under applicable rules of evidence, if no privilege were claimed. It is an unfair trial tactic if it appears that counsel calls such a witness merely to get him to claim his privilege before the jury to a series of questions not pertinent to the issues on trial or not admissible under applicable rules of evidence.
 
 
 25
 United States v. Compton, 365 F.2d 1, 5 (6th Cir.), cert. denied, 385 U.S. 956, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966): "This court has cautioned, however, that it is a practice so imbued with the 'potential for unfair prejudice' that a trial judge should closely scrutinize any such request." United States v. Vandetti, 623 F.2d 1144, 1147 (6th Cir. 198O)(citation omitted). However, the government has been permitted in some instances to present a witness who it knows will invoke his Fifth Amendment privilege where "the prosecution's case would be seriously prejudiced by a failure to offer him as a witness." United States v. Kilpatrick, 477 F.2d 357, 360 (6th Cir. 1973). See also Vandetti, 623 F.2d at 1147.
 
 
 26
 The trial court in this case, after balancing the probative value of the procedure against its prejudicial affect, decided to accomodate the governments request. The prosecution interrogated Farley by asking him a total of five questions, none of which alluded to the guilt or innocence of any of the defendants in this case. See Vandetti, 623 F.2d at 1147 ("In the most extreme case, presentation of such a witness is obviously unfair, as when there is extensive questioning after the prosecutor knew that the privilege would be asserted.") (citation omitted). The court immediately at the conclusion of Farley's appearance gave a cautionary instruction advising the jury not to consider Farley's action as bearing upon the guilt or innocence of any of the defendants. Under such circumstances, this court cannot conclude that the trial court committed reversible error when it permitted Farley to invoke his privilege against self-incrimination in the presence of the jury.
 
 
 27
 Lindsey next challenged the admission of a statement attributed to Bull[5] under the coconspirator exception to the hearsay rule which provides that "[a] statement is not hearsay if--... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). Lindsey argued that the statement could not have been made in the course of and in furtherance of the charged conspiracy because it was made over a year before the conspiracy, charged in the indictment, was formed. The government's proof, however, established that a conspiracy existed prior to the time alleged in the indictment, and "[a]n otherwise admissible declaration of one coconspirator is admissible against members of the conspiracy who joined after the statement was made." United States v. Holder, 652 F.2d 449, 451 (5th Cir. 1981)(citation omitted). Thus, even if Lindsey did not become a member of the conspiracy until the time charged in the indictment, the statement was properly admitted against him.
 
 
 28
 Lindsey and Lewis both attacked the district court's admission under Fed.R.Evid. 404(b)[6] of evidence of "other crimes, wrongs, or acts" which were not charged in the indictment. In particular, they challenged the admission of evidence concerning the theft of innertubes from GTC and a similar adjustment scheme in Macon, Georgia. The innertube evidence was admitted to prove Lewis' knowledge of and intent to steal from GTC, and the Macon evidence was admitted to prove Leon Vincent's knowledge and intent.[7] Fed.R.Evid. 404(b) expressly permits the introduction of uncharged misconduct evidence for this purpose, and the district court in this case determined that the probative value of the evidence was not substantially outweighed by its possible prejudicial effect. The ruling did not constitute a clear abuse of discretion. See Geisler v. Folsom, 735 F.2d 991, 997 (6th Cir. 1984)(evidentiary rulings "may not be disturbed on appeal in the absence of a showing of clear abuse of discretion.")
 
 
 29
 This court, having examined the defendants' remaining assignments of error, concludes that each is without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 An "adjustment" of a defective tire is a procedure whereby the manufacturer reimburses the purchaser the depreciated value of the tire determined by the tread wear at the time that the defect was discovered
 
 
 [2]
 Lindsey also challenged the validity of the court's jury instruction concerning the intent element of mail fraud. To prevail in a mail fraud action, the government had the burden of proving intent to defraud beyond a reasonable doubt. United States v. Goodpaster, 769 F.2d 374, 377 (6th Cir.), cert. denied, 106 S.Ct. 391, 88 L.Ed.2d 349 (1985). In this case, the trial court instructed the jury that in order to convict the defendants, it had to find that they had "wilfully and knowingly devised or ... intended to devise a scheme or artifice to defraud [GTC]," and that they used the mails "for the purpose of executing the scheme to defraud." This court finds no error in the instruction
 
 
 [3]
 Fed.R.Crim.P. 16(a)(1)(C) provides:
 (C) Documents and Tangible Objects. Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant.
 
 
 [4]
 The court's discovery order essentially mirrored the disclosure requirements of Fed.R.Crim.P. 16
 
 
 [5]
 Danny Vincent testified that Bull introduced Lewis to Danny and Leon Vincent as "the man that can make us a lot of money.... "
 
 
 [6]
 Fed.R.Evid. 404(b) provides:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [7]
 Leon Vincent was involved in the Macon adjustment scheme. Lewis and Lindsey were not