Neftali **PEREZ**, Appellant,

v.

Everett **JONES**, Superintendent, Great Meadow Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Appellees.

No. 743, Docket 90–2336.

United States Court of Appeals,
Second Circuit.

Argued April 4, 1991.

Decided June 5, 1991.

Abraham L. Clott, New York City (The Legal Aid Society, Federal Defender Services Appeals Unit, New York City, of counsel), for appellant.

Marc Frazier Scholl, Asst. Dist. Atty., New York County, N.Y. (Robert M. Morgenthau, Dist. Atty., New York County, N.Y., Nancy J. Dunn, Asst. Dist. Atty., of counsel), for appellees.

Before LUMBARD, WINTER and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Following remand from the Supreme Court, 490 U.S. 1033, 109 S.Ct. 1928, 104 L.Ed.2d 400, we again consider Neftali Perez's appeal from a dismissal by the Southern District of New York, John E. Sprizzo, *Judge*, of Perez's petition for a writ of habeas corpus.[1] Perez is imprisoned for his 1980 conviction, after a jury trial in New York County Supreme Court, of murder in the second degree. He was sentenced to 25 years to life imprisonment and is incarcerated in the Great Meadow Correctional Facility, where respondent Everett Jones is superintendent. Perez contends that during his trial he was denied due process of law when the prosecutor attempted to impeach the credibility of the only defense witness by asking repeated questions to which the witness invoked his fifth amendment right against self-incrimination. Perez also argues that the cross-examination violated his sixth amendment right to procure testimony. Because these claims lack merit, we affirm.

Shortly before midnight on February 28, 1979, a man brandishing a gun entered the Dominican Social Club, at 502 Amsterdam Avenue in Manhattan. He ordered everyone to the floor, and demanded to see the owner, who was not present. When a drunk patron challenged the gunman, he was shot and killed. Seven other patrons were in the club at the time of the shooting; two of them subsequently identified Perez as the perpetrator. In addition, another person, Odalis Quilez, was watching the club from a window across the street. She claimed that she saw Perez argue with the club's owner at about 10:30 p.m., return later, enter the club and leave, tucking a gun into his pants.

At trial, Nelson Camacho was the only defense witness. Camacho testified that he was at the club at the time of the shooting, and that Perez was not involved in the shooting. Camacho also testified that he first met Perez two weeks before trial, when they were incarcerated at Rikers Island.

The prosecutor cross-examined Camacho regarding the events of February 28. In an attempt to impeach Camacho's credibility, the prosecutor also inquired about his employment, his living arrangements, and his gold jewelry. When Camacho testified that he had about $100 a week in spending money, the prosecutor asked, "Did you ever have any more money?" Defense counsel objected.

Out of the hearing of the jury, the prosecutor explained to the court that he had information that Camacho had "more money" because he had recently been involved in two substantial drug sales, for which he had been indicted. Camacho allegedly possessed a weapon in one of these transactions. The prosecutor sought to use this information to impeach Camacho's credibility. The defense objected that the questioning would raise self-incrimination issues and, consequently, Camacho's attorney should be present. The court agreed, and adjourned the trial.

1. Perez filed his petition in 1986, which was dismissed on the grounds of state procedural default. This court denied Perez a certificate of probable cause, but the Supreme Court granted his *pro se* petition for a writ of certiorari. On April 24, 1989, the Supreme Court vacated the order denying the certificate of probable cause and remanded the case to this court for further consideration in light of *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (holding that procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar). This court remanded the action to Judge Sprizzo, who considered the petition's merits and dismissed it in a July 16, 1990 order.

The next day, accompanied by an attorney, Camacho returned to the stand. The prosecutor asked him 14 questions. To each, Camacho responded, "I respectfully refuse to testify on the grounds that the answer to this question may tend to incriminate me or degrade me." The questions were as follows:

Mr. Camacho, I believe you said yesterday that you reside with your mother, is that right?

Mr. Camacho, is your telephone # 873–5318?

Mr. Camacho, is your mother's name Antonia Camacho?

Mr. Camacho, isn't it accurate that your mother doesn't live at 147 West 83 Street but that she actually resides at 509 Amsterdam Avenue?

Mr. Camacho, isn't it true that the telephone number that I read before, 873–5318 is registered to Antonia Camacho, your mother, at 509 Amsterdam?

Mr. Camacho, have you ever been at the address, 160 West 84 St.?

Mr. Camacho, isn't it accurate that on March 18, 1980, just a few weeks ago, you were at—160 West 84 St—in a third floor apartment in that building?

Is it accurate that you were there at that address on that date with individuals by the names of Shorty and Pete?

Mr. Camacho, isn't it accurate that you and this individual, other individual, Shorty, had a gun that was kept in that apartment on that date in a speaker box under a table?

It was only after these nine questions that defense counsel objected. He stated:

Your Honor, with respect to this new development, where the [witness] is invoking the fifth amendment, I respectfully request that he be granted immunity to avoid prejudice to [the defendant's] case by the continued questions that are being put to him in front of the jury from which certain inferences, unfavorable to the defendant, may be drawn since he was called as a witness for the defense.

The court and counsel discussed whether the court would have the authority to grant immunity under these circumstances, as the witness was called by the defense and the impeachment concerned events unrelated to the current trial. The court determined that, even if it had such authority, it would not compel the grant of immunity. Neither the prosecutor nor the defense challenged the basis for Camacho's invocation of the privilege; neither requested that the judge instruct the jury about the use of the testimonial privilege. Thereafter, the prosecutor asked the following questions, which Camacho again refused to answer.

Mr. Camacho, isn't it accurate on the date that I mentioned, March 18, 1980 in the apartment that I mentioned at 160 West 84 St. that you sold almost three ounces of cocaine for $4,200?

Mr. Camacho, I direct your attention to March 24, 1980 just a few weeks ago, were you in the same third floor apartment at 160 West 84 St.?

And were you not there with a fellow by the name of Pete again?

And isn't it accurate that you sold a quantity of cocaine for about $350 on that date in that apartment to the same person you had sold cocaine just a few days before? Did you indicate that you would be able to supply a half-a-pound of cocaine at a later date for about $14,000?

After this question, defense counsel approached the bench. He moved for a mistrial, arguing that the prosecutor's questions were very prejudicial to the credibility of Camacho, destroyed his value as a defense witness, and that, as a consequence, Perez was being denied a fair trial.

The court denied the motion. The prosecutor asked one final question:

Mr. Camacho, I direct your attention to January 24, 1980 on that date did you possess a quantity of narcotics and did you possess a quantity of stolen property on that date?

On redirect, defense counsel made one inquiry:

Is it fair to say that early this month, April, that on Rikers Island you heard some talk about this case.

The witness again responded by invoking his fifth amendment privilege. Defense counsel indicated that he would ask no further questions because he believed that the witness would refuse to answer them for the same reason.

In his petition, Perez contends that the prosecutor's continued questioning after Camacho's invocation of the fifth amendment improperly undermined the witness' credibility, thereby violating his sixth amendment right to procure testimony and his fourteenth amendment right to due process of law.

■ Perez first argues that the prosecutor's cross-examination of Camacho was designed solely to elicit an invocation of the fifth amendment from Camacho and was, therefore, an improper means to impeach his credibility.[2] He contends that the court should have prevented the prosecutor from so questioning Camacho and that the error denied him due process of law. We disagree.

■ A witness' invocation of his fifth amendment privilege may deny a defendant due process of law when the prosecutor commits misconduct by making a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege and when, in the circumstances of a given case, inferences from a witness' refusal to answer adds critical weight to the prosecution's case. *See Rado v. Connecticut,* 607 F.2d 572, 581 (2d Cir.1979) (citing *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980); *see also United States v. Casamento,* 887 F.2d 1141, 1186 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

Here, the prosecutor did not make a conscious and flagrant attempt to build its case out of inferences arising from Camacho's assertion of the testimonial privilege. Camacho was a defense witness. The prosecutor cross-examined Camacho about the events of February 28, then attempted to impeach his credibility with specific instances of misconduct, in accordance with Fed.R.Evid. 608(b). The first five of these questions concerned Camacho's background, and there is no reason to believe that the prosecutor knew that Camacho would invoke the fifth amendment. Indeed, Camacho had answered similar questions during his first day of testimony, before his attorney was present. The remaining nine questions concerned events wholly unrelated to the crime for which Perez was charged. As such, inferences drawn from Camacho's invocation of the privilege could not have been used to build the state's case-in-chief against Perez.

Nor can it be said that inferences from Camacho's refusal to answer added critical weight to the state's case. Three government witnesses had identified Perez as the perpetrator of the shooting.

In addition, defense counsel raised no objection to the cross-examination until the prosecutor had already asked 9 of the 14 questions. At that time, defense counsel only requested that Camacho be granted immunity, so that he could respond to the questions without the possibility of self-incrimination. Defense counsel did not challenge the witness' invocation of the fifth amendment, object to the questioning itself, or request that the court instruct the jury regarding the testimonial privilege. After the thirteenth question, defense counsel moved for a mistrial, claiming Perez was denied a fair trial because the prosecutor's questions "are very prejudicial to the credibility of the witness and destroying his value as a witness." Under these circumstances, we find that the cross-exam-

---

**2.** In reaching the merits of this appeal, we reject the government's contention that Perez's claim is procedurally infirm. The government argues that although *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) does not preclude us from reaching the merits of this appeal, it does not compel us to do so. Assuming, *arguendo,* that we have such authority, we decline the government's invitation. Second, because Perez does not seek to establish a "new rule" of federal constitutional law, his claim is not precluded by *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), and *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

ination of Camacho did not deny Perez due process of law.

 Relying on *United States v. Pardo*, 636 F.2d 535, 542–46 (D.C.Cir.1980), Perez also claims that the improper impeachment of Camacho violated his sixth amendment right to procure testimony because it rendered Camacho useless as a witness. In *Pardo*, the D.C. Court of Appeals found that the trial court erred in not compelling a witness, who had invoked his right against self-incrimination, to testify. 636 F.2d at 546. This witness was a defendant who had pleaded guilty to the offenses charged. *Id.* at 537. His co-defendants sought to have him testify as to the events relating to the charges; they agreed not to inquire into other matters for which the defendant might still have a fifth amendment right. *Id.* at 544. Because the defendant faced no further threat of incrimination for the matters for which he would testify, the appellate court determined that there was no conflict between his fifth amendment right and his co-defendants' right to procure testimony. *Id.* at 544–45. The court, therefore, reversed the convictions of the co-defendants who sought to use the testimony. *Id.* at 545.

Unlike the defendant in *Pardo*, Perez was not prevented from obtaining the direct testimony of Camacho on issues relating to the February 28 shooting. Rather, Camacho was a defense witness who testified freely on direct examination by Perez's counsel; he invoked the fifth amendment only when he was cross-examined, regarding issues unrelated to the crime for which Perez was charged. The prosecutor asked these questions in an attempt to impeach Camacho's credibility. Although Camacho also invoked the privilege in response to defense counsel's first question on redirect, defense counsel did not object; he simply stated that because he believed that the witness would refuse to answer, he would ask no further questions. Perez did introduce Camacho's testimony; he was not prevented from procuring it. We also find no merit in Perez's contention that the prosecutor's cross-examination of Camacho violated his sixth amendment right to procure testimony.

Affirmed.