**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy Lee CLARK, Defendant–Appellant.**

**No. 92–5663.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1992.

Decided and Filed March 10, 1993.

---

James R. Dedrick, Asst. U.S. Atty., D.
Gregory Weddle, Asst. U.S. Atty. (argued
and briefed), Jerry G. Cunningham, U.S.

Atty., Office of the U.S. Atty., Knoxville, TN, for plaintiff-appellee.

Steven G. Shope (argued and briefed), Knoxville, TN, for defendant-appellant.

Before: NORRIS and SILER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

Defendant Roy Lee Clark appeals his conviction of murder to obstruct justice, in violation of 18 U.S.C. §§ 1512(A)(1) and 1111, from the United States District Court for the Eastern District of Tennessee. The conviction stemmed from evidence that Clark murdered his brother-in-law to preclude his cooperation with law enforcement agencies concerning Clark's illicit activities, and to prevent him from ultimately testifying against Clark. On appeal, Clark raises six assignments of error challenging the conviction on evidentiary and procedural grounds. For the reasons which follow, we AFFIRM the judgment of the district court.

Evidence adduced at trial revealed that Michael Lloyd Rector, defendant's brother-in-law and former employee, tipped off the F.B.I. that defendant Clark was involved in automobile thefts and operated a "chop shop" to sell the vehicles and auto parts that he had stolen. In 1987, the F.B.I. opened an investigation of these activities. Rector, a law enforcement officer in the Tennessee Department of Transportation, became involved in the F.B.I. sting operation which resulted from the investigation. The record suggests that defendant's wife, Carol Rector Clark, and daughter, Celene Clark Hobbs, among others, were involved in defendant's "chop shop" operation.

During the evening of May 30, 1990, Rector discovered he had a flat tire after working the evening shift at a highway weighing station. Though a co-worker offered him a ride home to retrieve a spare tire, Rector drove a state vehicle instead. At home, around 11:30 p.m., Rector changed into a less formal work uniform, took the spare tire and left. Rector's wife remained in bed. One of Rector's neighbors testified that he saw Rector standing in his driveway with at least one other man. The neighbor described the man as having features similar to defendant Clark's, but the neighbor could not positively identify Clark as that man. In any event, Rector returned to the weighing station, changed the tire on his vehicle and again headed home, this time in his own car.

Between 12:30 a.m. and 1:00 a.m., Rector's neighbors heard a rapid succession of loud sounds, which at least one neighbor believed were gun shots. The next morning, Rector's wife discovered her husband's body in the driveway of their home. An autopsy disclosed that Rector was shot five times by bullets from a .9 mm pistol. A cigar butt, which the F.B.I. later established bore defendant's teeth marks, was found at the scene. Within hours, F.B.I. agents arrested Clark on auto theft charges and placed him in custody under suspicion for the murder of Rector.

The government's case against Clark relied upon voluminous evidence of defendant's auto theft activities, which included video-taped car thefts, to establish a motive for Clark. The government sought to prove Clark killed his brother-in-law to prohibit him from divulging incriminating information regarding Clark's criminal activities. The government bolstered its case with the testimony of inmate informants and undercover F.B.I. agents, posed as inmates, who claimed that defendant confessed he murdered his brother-in-law to prohibit him from testifying. The undercover F.B.I. agents produced more than forty secretly recorded conversations with defendant, made over a period of eight days. During the taped dialogues, defendant consistently maintained his innocence of the murder, explaining that the government was attempting to frame him. F.B.I. agents contended that defendant, who had never previously been imprisoned, feared the cells contained listening devices and so only discussed his commission of the mur-

der with them quietly and out of earshot of the tape recorders.[1]

In his defense, Clark presented a stream of alibi witnesses claiming that, on the night of the murder, he and his wife were at the nearby home of their friends, the Maples. Another alibi witness, who worked at a convenience store located near the Rector house, told the court three suspicious looking men came into the store that night to obtain directions to Rector's street. Clark's wife and daughter testified on his behalf, but confined their testimony to the night of the murder, invoking their Fifth Amendment rights against self-incrimination to all other questions.

After two days of deliberation, the jury informed the court that it could not reach a unanimous verdict. The court read an *Allen* charge to the jurors and the jury foreman announced their decision to continue deliberating. The following day, the jury announced its verdict of guilty as charged.

The court sentenced defendant to life imprisonment, a $75,000 fine and restitution of $116,960 to the Tennessee Criminal Victims' Compensation Fund ($7,500) and the United States Department of Treasury ($109,460).[2]

## I.

██ In his first assignment of error, Clark argues that his constitutional rights were violated when government counsel's questions of two defense witnesses on cross-examination forced them to repeatedly assert their Fifth Amendment right against self-incrimination in front of the jury. On cross-examination, the defendant's wife and daughter invoked their Fifth Amendment privilege a combined total of over forty times in response to government questions concerning their possible involvement in defendant's chop shop operation, and other matters outside the scope of their direct alibi testimony. The court insisted the women repeat verbatim the following language, in the presence of the jury, each time they invoked the privilege:

Sir, upon advice of my counsel I respectfully decline to answer on the grounds that my answer may tend to incriminate me and I rely upon my constitutional rights guaranteed by the 4th, 5th, 9th and 10th Amendments to the United States Constitution and Article I, Section 9 of the Constitution of the State of Tennessee.

The court, on at least two occasions, cautioned the jury as follows:

Members of the jury, you are instructed this witness has an absolute right to exercise her Constitutional rights, particularly her 5th Amendment privilege by refusing to answer certain questions on the grounds that those answers may tend to incriminate her. Therefore, you are instructed that you should not speculate as to what this witness' answers would or would not be. Also you are not to consider this witness' refusal to answer the questions as any evidence against the defendant, Mr. Clark.

Joint Appendix, pp. 223, 250–251.

Defendant's wife and daughter invoked their Fifth Amendment right, based upon the advice of counsel, because of the likelihood they would be indicted for RICO violations arising from their participation in defendant's illegal "chop shop" activities. Defense counsel repeatedly asked the court to limit the scope of the government's cross-examinations to the witnesses' accounts of the defendant's whereabouts on the night of the murder. The court denied the requests, essentially telling counsel that if the government did not have the opportunity to cross-examine the two witnesses on matters beyond their direct testimony, the government would be unable to impeach the credibility of the witnesses.

██ While reversible error does not exist each time a witness asserts her privilege to refuse to answer a question, certain circumstances in a particular case may sug-

1. One F.B.I. agent told the court that his tape recorder was not working when defendant confessed to him and that he was unable to replace it for four days.

2. Reimbursement to the Treasury is for compensation of court-appointed counsel.

gest an error. *Namet v. United States,* 373 U.S. 179, 186, 83 S.Ct. 1151, 1154, 10 L.Ed.2d 278 (1963). In the instant case, the defendant contends such circumstances exist in the form of prosecutorial misconduct. Prosecutorial misconduct of this nature arises when the government makes a "conscious and flagrant attempt" to build its case on inferences derived from the assertion of the Fifth Amendment privilege. *Namet v. United States,* 373 U.S. at 186, 83 S.Ct. at 1154; *Perez v. Jones,* 935 F.2d 480, 483 (2nd Cir.1991). Even if such circumstances exist, however, a reviewing court will refuse to find reversible error if the circumstances occurred only briefly during a long trial and the court sufficiently instructed the jury to disregard them. *Namet v. United States,* 373 U.S. at 187, 83 S.Ct. at 1155. It is up to the court to weigh the importance of admitting all relevant information versus the prejudice to the defendant and strike a balance between these competing interests. *United States v. Vandetti,* 623 F.2d 1144, 1149 (6th Cir. 1980). Striking the balance is within the sound discretion of the trial court and will not be reversed absent evidence of an abuse. *United States v. Vandetti,* 623 F.2d at 1149. A district court has abused its discretion when a reviewing court is firmly convinced that a mistake has been made. *In re Bendectin,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

■ In the instant case, the prosecution asked cross-examination questions of the two witnesses in an effort to impeach their credibility. These questions sought personal information about the witnesses not addressed on direct examination, concerning illicit activities which might tarnish their credibility. Such questions may be permissible pursuant to Fed.R.Evid. 611(b) which limits cross-examination "... to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." A proper area of inquiry on cross-examination is a witness' motivation in testifying and possible bias. *United States v. Abel,* 469 U.S.

45, 51–52, 105 S.Ct. 465, 468–69, 83 L.Ed.2d 450 (1984); *United States v. Hatchett,* 918 F.2d 631, 641 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

We cannot say the court erred in permitting the government to question the witnesses regarding their involvement with defendants in an effort to impeach their credibility. The witnesses were unhindered in their ability to use their Fifth Amendment privilege to avoid incriminating questions and the jury was properly instructed as to how to treat the witnesses' assertions of their testimonial privilege. While repeated assertions of the Fifth Amendment privilege may create an undue inference of guilt if elicited during the cross-examination of a criminal defendant, the witnesses were not on trial and any adverse inference had no relation to the question of whether Clark killed Rector. The witnesses testified extensively on direct examination invoking the privilege only against questions concerning their own criminal activities. The possible inferences that the witnesses may have been involved in criminal car theft activities with the defendant suggests they may have had a motive for providing defendant with an alibi, an issue of credibility, not incrimination.

We find that the government did not attempt to build its case against Clark on inferences derived from the two witnesses' assertions of their Fifth Amendment privileges. Further, the court properly instructed the jury on the matter and, thus, we will not reverse the sound discretion exercised by the district court.

This assigned error fails.

### II.

In his second assignment of error, Clark controverts the admission of irrelevant and unduly prejudicial evidence of his other "bad acts."

Fed.R.Evid. 404(b) sets forth:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, howev-

er, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The district court retains broad discretion in determining the admissibility of other acts evidence. *United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985). The court, however, must ensure that the defendant is tried for the crimes charged and not for who he is or what he did before. *United States v. Robison,* 904 F.2d 365, 368 (6th Cir.1990), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990); *United States v. Vance,* 871 F.2d 572, 575 (6th Cir.1989), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313.

■ Bad acts evidence may be admissible where it is sufficiently related to the crimes charged and shows their development. *United States v. Long,* 889 F.2d 1573, 1579 (6th Cir.1989); *United States v. Passarella,* 788 F.2d 377, 382 (6th Cir. 1986); *United States v. Hamilton,* 684 F.2d 380, 384 (6th Cir.1982), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982). The other acts need not be identical to the crimes charged to be admissible. *United States v. Hamilton,* 684 F.2d at 384–385.

■ Clark specifically challenges the admissibility of the following "bad acts:" 1) testimony that defendant had threatened and plotted to harm witnesses against him and other enemies; 2) voluminous evidence depicting defendant's car theft activities; 3) defendant's robbery plans; 4) defendant's plans to escape from prison; and 5) defendant's drug activity. The government argues that the evidence was relevant and probative of defendant's criminal plan as well as defendant's motive and intent to kill Rector in order to silence his testimony regarding defendant's auto theft crimes.

The bulk of the contested evidence concerned defendant's car theft activities, which, the government contended, defendant sought to hide by killing Rector. This evidence is clearly relevant to proving defendant's motivation for killing Rector. Likewise, the evidence that defendant threatened and planned to harm other witnesses against him is relevant to prove defendant's plans and motives. Finally, testimony regarding Clark's plan to escape, as well as his tentative plans to rob a race track and set up a drug trade, came from inmates who were establishing their relationship with the defendant before testifying as to what defendant told them regarding the murder. While this particular testimony does not appear to be relevant to proving defendant's plan or motive to kill Rector, it also does not appear to have been admitted "to prove the character of [Clark] in order to show action in conformity therewith" in contravention of Fed.R.Evid. 404(b).

■ After determining the admissibility of other acts evidence pursuant to Fed. R.Evid. 404(b), the court has broad discretion to ensure the probative value of the evidence outweighs any prejudice. *United States v. Blakeney,* 942 F.2d 1001, 1018 (6th Cir.1992), *cert. denied,* — U.S. —, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. Acosta–Cazares,* 878 F.2d 945, 950 (6th Cir.1989), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982); *United States v. Czarnecki,* 552 F.2d 698, 702 (6th Cir.1977), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).

All the evidence depicting defendant's involvement in the automobile theft activities, including his threats to other potential witnesses, is probative of defendant's criminal plan, his motive for murder and his intention to prohibit anyone from speaking against him. We find the district court properly found its probative value outweighed any prejudice to Clark. Though not probative of anything relevant, we do not find the testimony of undercover F.B.I. agents concerning defendant's tentative criminal plans unduly prejudicial in light of the voluminous admissible evidence of defendant's automobile theft crimes. Thus, we decline to style this testimony as inadmissible "bad acts" evidence.

This assignment of error fails.

## III.

 In his third assigned error, Clark avers that his due process rights were violated by the failure of government counsel and the district court to abide by the rules for alibi rebuttal witnesses. Clark specifically complains that the government failed to provide him with adequate notice of all alibi rebuttal witnesses and that the court erroneously permitted a government witness to testify in rebuttal to defendant's alibi, though he was not previously listed as an alibi rebuttal witness.

Government witness Paul Meyer, a neighbor of Rector, testified that he saw Rector and another man standing in Rector's driveway at about 11:30 p.m., about ninety minutes before the murder occurred. Shortly after, Meyer heard gunshots. Paul Meyer, however, was unable to positively identify the defendant as the man he saw in the driveway that night. Meyer's testimony failed to establish defendant's presence at the scene and in no way appeared to rebut the testimony of defense alibi witnesses. The government did not include Meyer on its list of alibi rebuttal witnesses. Upon defendant's objection at trial, the district court ruled Meyer was not an alibi rebuttal witness and permitted his testimony.

FED.R.CRIM.P. 12.1(a) requires a defendant to offer notice of his intent to put forth an alibi and alibi witnesses within 10 days, upon the written demand of the government. FED.R.CRIM.P. 12.1(b) further requires that:

> Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

FED.R.CRIM.P. 12(e) permits the court to grant an exception to the above requirements "for good cause shown."

The Notes of the Committee on the Judiciary, House Report No. 94–247 explain the notice of alibi rule thusly:

> **The rule is prosecution-triggered.** If the prosecutor notifies the defendant of the time, place and date of the alleged offense, then the defendant has 10 days in which to notify the prosecutor of his intention to rely upon an alibi defense, specify where he claims to have been at the time of the alleged offense, and provide a list of his alibi witnesses. The prosecutor, within 10 days but no later than 10 days before trial, must then provide the defendant with a list of witnesses who will place the defendant at the scene of the alleged crime and those witnesses who will be used to rebut the defendant's alibi witnesses.

 In the instant case, the government never submitted a written demand for defendant's notice of alibi. The defendant gratuitously produced its notice and thereby sought to obtain the government's list of witnesses who could place defendant at the scene of the murder or who could refute his alibi. "[A] defendant's *gratuitous and unsolicited* disclosure of alibi witnesses does not obligate the government pursuant to Rule 12.1(b) to furnish the names of rebuttal witnesses linking the defendant to the scene of the crime." *United States v. Braxton*, 877 F.2d 556, 560 (7th Cir.1989). Likewise, a court does not err by permitting a nondisclosed alibi rebuttal witness to testify where the defendant knows the witness' identity and testimony. *United States v. Wood*, 780 F.2d 555, 560–561 (6th Cir.1986), *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1522, 89 L.Ed.2d 920 (1986).

We find the government owed the defendant no obligation to produce a list of alibi rebuttal witnesses and that the court did not err in permitting the disputed testimony.

This assigned error fails.

## IV.

Defendant's fourth assigned error controverts the propriety of the government's efforts, via the use of undercover informants, to elicit incriminating information from him regarding the Rector murder.

Hours after the murder was discovered, police arrested defendant and charged him with theft of government property, a charge that arose from an ongoing investigation of his car theft activities. The federal authorities also suspected defendant slayed Rector, who had provided them with incriminating information about the defendant's criminal activities. In an attempt to garner more information, the government placed two F.B.I. agents, guised as imprisoned Mafiosi, into cells near defendant's. The undercover agents used their gangster cover to offer defendant their services for hire in a variety of criminal designs. In the course of their conversations, the agents testified that the defendant confessed having committed the murder. The agents further explained that their over forty tapes of secretly recorded conversations with defendant did not contain the confessions because defendant deliberately spoke about the murder in extremely hushed tones.

Where, as here, an undercover government agent is placed in a cell to elicit defendant's statements regarding a crime unrelated to the one for which he is incarcerated, the statements are admissible and do not violate defendant's Sixth Amendment right to counsel. *McNeil v. Wisconsin*, —— U.S. ——, —— – ——, 111 S.Ct. 2204, 2207–2208, 115 L.Ed.2d 158 (1991); *Illinois v. Perkins*, 496 U.S. 292, 299–300, 110 S.Ct. 2394, 2398–99, 110 L.Ed.2d 243 (1990). It is only after the relevant charges are filed that the Sixth Amendment precludes the government from attempting to solicit such incriminating statements from the defendant without regard to the accused's right to counsel. *Illinois v. Perkins*, 496 U.S. at 299, 110 S.Ct. at 2398. Thus, in the instant case, the district court properly admitted the incriminating testimony.

This assignment of error is not well taken.

## V.

In his fifth assigned error, Clark argues that the government improperly withheld exculpatory evidence in spite of the court's general *Brady* discovery order. The exculpatory evidence consisted of the testimony of three witnesses who recanted seeing strangers in a convenience store seeking directions to Rector's street on the night of the murder. Defense counsel located and interviewed two of the witnesses, and ultimately called them to testify at trial.

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), obliges the government to disclose evidence to the accused where it is both favorable to him and material to his guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987); *United States v. Frost*, 914 F.2d 756, 771 (6th Cir.1990); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988). "Material evidence" is that which is "... so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The prosecutor does not violate his constitutional duty to disclose unless his "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. at 108, 96 S.Ct. at 2400. *See also, United States v. Frost*, 914 F.2d at 771.

In the instant case, we find no *Brady* violation because we cannot say there is a reasonable probability that the result of the trial would have been different had the government disclosed these witnesses to the defendant. *Pennsylvania v. Ritchie*, 480 U.S. at 57, 107 S.Ct. at 1001; *United States v. Roy Lee Clark*, 957 F.2d 248, 251–252 (6th Cir.1992) (Appeal of defendant's conviction for theft of government property). Two reasons support our holding: 1) The defense located the witnesses and called them to testify at trial on behalf

of the defendant; and 2) the testimony only described the existence of people asking directions to the street on which the murder victim lived and so gave little or no support to defendant's claim of innocence.

This assigned error fails.

## VI.

██ In his final assignment of error, Clark challenges the propriety of the court's instruction to the jury that it was obliged to reach a unanimous verdict.

After two days of deliberation, the jury sent a note to the trial judge that it could not reach a verdict. Fifty minutes later, the court recited a standard *Allen* charge. Defense counsel did not object. Defense counsel now challenges the court's instruction on the following grounds: 1) it was given so late in the deliberations that it imposed undue pressure on the jury; and 2) the instruction failed to remind the jurors of their obligation to acquit the defendant unless they found proof of guilt beyond a reasonable doubt.

██ An appellate court must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010–1011 (6th Cir.1987). A reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial. *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72, 73 (6th Cir.1990); *Kitchen v. Chippewa Valley Schools*, 825 F.2d at 1011. Where, as here, the defendant acquiesced to the court's charge by his failure to object to it, this court will not address the question on appeal unless there exists an obvious and prejudicial error. *Young v. Langley*, 793 F.2d 792, 795 (6th Cir.1986), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986).

The trial court in the instant case charged the jury as follows:

Members of the jury, I have received your note and I realize that you are having some difficulty with reaching a unanimous agreement. However, I will ask that you return to the jury room and deliberate further. It's not unusual that jurors have some difficulty in reaching a unanimous verdict. Sometimes after further discussions jurors are able to work out their differences and agree. Please keep in mind how very important it is for you to reach a unanimous verdict or agreement. If you cannot agree and if the case is tried again, there is no reason to believe that any new evidence will be presented or that any twelve new jurors will be any more conscientious or impartial than you are.

Let me remind you that it is your duty as jurors to talk with each other about the case, to listen carefully and respectfully to each other's views and to keep an open mind, as you listen to what your fellow jurors have to say. Let me remind you that it is your duty to make every reasonable effort you can to reach a unanimous agreement. Each of you, whether you are in the majority or the minority ought to seriously reconsider your position in light of the fact that other jurors who are just as conscientious and just as impartial as you are have come to a different conclusion. Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourself [*sic*] if the doubt you have is a reasonable one given that other members of the jury do not share your doubt. None of you should hesitate to change your mind if after reviewing things you are convinced that other jurors are right and your original position is wrong. Remember this. Do not ever change your mind just because other jurors see things differently or you just, or just to get the case over with. As I told you before, in the end your vote must be exactly that, your own

vote. As important as it is for you to reach a unanimous agreement, it is just as important that you do so honestly and in good conscience.

What I have just said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry. I would ask that you now return to the jury room and resume your deliberations.

Joint Appendix, pp. 401–403.

The district court's charge explicitly sought to avoid coercion or other pressure to reach a verdict. Moreover, the charge included a reminder that the defendant could only be convicted upon proof of guilt beyond a reasonable doubt. Thus, this court finds no obvious and prejudicial error in this instruction. *See United States v. Cochran,* 939 F.2d 337, 340 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1166, 117 L.Ed.2d 413 (1992); *United States v. Sawyers,* 902 F.2d 1217, 1220 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

This assigned error is not well taken.

The judgment of the district court is hereby AFFIRMED.