53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmy Ray GARTMAN, Jr., Defendant-Appellant.
 No. 94-5506.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 9, 1995.
Decided: May 9, 1995.
 
 ARGUED: John Herman Hare, Assistant Federal Public Defender, Columbia, SC, for Appellant. Dean Arthur Eichelberger, Assistant United States Attorney, Columbia, SC, for Appellee. ON BRIEF: J. Preston Strom, Jr., United States Attorney, Columbia, SC, for Appellee.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The instant case is an appeal from the conviction of Appellant, Jimmy Gartman, Jr. ("Gartman"), for intimidation of a witness in an official proceeding, in violation of 18 U.S.C. Sec. 1512(b). On October 5, 1993, a federal grand jury in the United States District Court for the District of South Carolina returned a single count indictment charging Gartman with intimidating and assaulting the victimwitness, Sharon Gregory ("Gregory"), with the intent to cause her to withhold testimony from an official proceeding. A jury trial was held on December 13 and 14, 1993, and Gartman was duly convicted.
 
 
 2
 On February 25, 1994, a sentencing hearing was held. During the hearing, the district judge chose to depart upwardly from Gartman's calculated criminal history category, pursuant to United States Sentencing Guidelines (U.S.S.G.) Sec. 4A1.3(e). Gartman was accordingly sentenced to 68 months in prison, to be followed by a five year term of supervised release.
 
 
 3
 Gartman filed a timely notice of appeal on June 30, 1994. We affirm.
 
 Factual Background
 
 4
 In 1993, the Federal Bureau of Investigation (FBI) assigned an agent to investigate allegations that Gartman and members of his family had engaged in an insurance fraud scheme. A series of grand jury subpoenas were issued to relatives of Gartman, including his sister. Gartman learned from his sister that the FBI was investigating both him and his father in connection with the alleged insurance fraud.
 
 
 5
 One of the witnesses subpoenaed to appear before the grand jury was Gregory, Gartman's former girlfriend. Gartman and Gregory had lived together previously, but had stopped living together at some time prior to September 11, 1993. At trial, Gartman testified that he and Gregory had continued to have a friendly relationship even after they ceased living together; Gregory, however, testified that the relationship had not continued on friendly terms.
 
 
 6
 On September 11, 1993, Gartman and Gregory were both at "Knocker's Oasis," a nightclub in West Columbia, South Carolina. The testimony at trial was that Gartman accused Gregory of setting him up with the FBI and the South Carolina Law Enforcement Division. Gartman conceded, in his testimony at trial, that a dispute arose that evening and that he slapped Gregory; however, he contended that he did not threaten Gregory in an attempt to keep her from testifying, and that he was not even aware that she was a potential witness against him in the pending grand jury investigation. Gregory testified, in contrast, that during the assault--during which Gartman grabbed her by the arms, twisted her arms, and hit her in the head with his fist--he accused her of setting him up with the FBI, and made several threats against her. Gartman continued to maintain during trial, however, that the dispute was merely a domestic disturbance, and not an attempt to prevent Gregory from testifying before the grand jury.
 
 
 7
 On October 5, 1993, a federal grand jury in the United States District Court for the District of South Carolina returned a single count indictment charging Gartman with intimidating and assaulting Gregory with the intent to cause her to withhold testimony from an official proceeding, in violation of 18 U.S.C. Sec. 1512(b). A jury trial took place on December 13 and 14, 1993, and Gartman was duly convicted.
 
 
 8
 On February 25, 1994, a sentencing hearing was held. At sentencing, the government moved for an upward departure, pursuant to U.S.S.G. Sec. 4A1.3, on the ground that the criminal history category calculated by the probation officer did not adequately reflect the seriousness of Gartman's past criminal conduct or the likelihood that he would commit other crimes. In support of the motion, the government presented testimony by two law enforcement officers regarding two potentially deadly confrontations between Gartman and the officers. The first incident occurred on December 10, 1991, when Gartman pointed a firearm at Troy Livingston, a deputy with the Orangeburg County Sheriff's Office, who had gone to the Gartman residence to serve Gartman with a deposition subpoena. At that time, Gartman fired a shot in the air, and told Livingston that "the only way they can get you all off this porch is in body bags." The second incident occurred on January 16, 1993, when Gartman refused to stop his car when Brian Mayfield, a trooper with the South Carolina Highway Patrol, noticed him driving in an erratic manner. During that incident, Mayfield observed what he described as the butt of a semi-automatic pistol tucked inside Gartman's belt.
 
 
 9
 Based on the evidence concerning the 1991 and 1993 confrontations with the two police officers, the trial judge granted the government's motion for an upward departure under U.S.S.G. Sec. 4A1.3(e). Gartman was accordingly sentenced to 68 months in prison, to be followed by a five year term of supervised release. Gartman filed a timely notice of appeal on June 30, 1994.
 
 
 10
 I. Admission of Evidence Concerning the Grand Jury Investigation
 
 
 11
 Gartman first alleges, on appeal, that the district court erred in allowing the government to present evidence about the nature of the grand jury investigation concerning Gartman's involvement in the alleged insurance fraud scheme. In particular, Gartman contends that any probative value of such evidence was clearly outweighed by its prejudicial effect, and thus that the evidence should have been excluded. Because the evidence was relevant to establishing Gartman's motive for intimidating Gregory, and thus clearly relevant to his prosecution for intimidating a witness in violation of 18 U.S.C. Sec. 1512(b), the district court did not abuse its discretion in admitting that evidence.
 
 
 12
 Rule 401 of the Federal Rules of Evidence ("FRE") defines "relevant" evidence as
 
 
 13
 evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FRE 401 (emphasis added). Rule 403, moreover, provides that all relevant evidence is admissible unless its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." FRE 403 (emphasis added). This Circuit has repeatedly interpreted these provisions of the Rules of Evidence as affording great discretion to trial judges in making evidentiary rulings. See, e.g., United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.1988), cert. denied, 488 U.S. 908 (1988) ("[T]he appraisal of the probative and prejudicial value of evidence under Rule 403 is entrusted to the sound discretion of the trial judge; absent extraordinary circumstances, the Court of Appeals will not intervene in its resolution.").
 
 
 14
 The case law is well established that in a witness intimidation prosecution, the jury can, and should, be provided with information regarding the nature of the offenses under investigation and the extent of the defendant's involvement in such investigation, so that the jury can assess the intensity of the defendant's motive to intimidate a witness from testifying in the investigation. In United States v. Bradwell, 388 F.2d 619 (2d Cir.1968), cert. denied, 393 U.S. 867 (1968), for example, the Second Circuit held that the district court did not err in allowing the jury in that case to learn that the grand jury investigation in which the defendant was a target, concerned the defendant's alleged promotion of prostitution. 388 F.2d at 620. In so holding, the Second Circuit found:
 
 
 15
 In order to show that a defendant has intimidated a witness in a grand jury investigation, it is appropriate for the Government to establish a motive by connecting him with the objects of the investigation. Moreover, in order that the jury may assess the intensity of his motive, it should know the nature of the offense under investigation and the extent of the defendant's involvement; limiting the Government to a mysterious statement that the defendant was somehow connected with an investigation into some unidentified crime would unduly hamper its presentation.
 
 
 16
 Id. at 620-21.
 
 
 17
 Likewise, in United States v. Clark, 988 F.2d 1459 (6th Cir.1993), cert. denied, 114 S.Ct. 105 (1993), the Sixth Circuit, in a witness intimidation prosecution under 18 U.S.C. Sec. 1512, found that where certain "bad acts" evidence was probative of the defendant's motive to silence a witness's testimony, its relevance outweighed its possible prejudicial effect, and thus was admissible. 988 F.2d at 1465. In particular, the Sixth Circuit found that evidence of the defendant's car theft activities was relevant to his motivation for killing the witness who was to testify as to the auto theft crimes, and thus admissible under the Federal Rules of Evidence; the Court found specifically that the evidence depicting the defendant's involvement in automobile theft activities, including his threats to other potential witnesses, was probative of the defendant's criminal plan, his motive for murder, and his intention to prohibit anyone from speaking against him, and thus that the district court properly found its probative value outweighed any prejudice to him. Id. Accordingly, the Court held that the district court was well within its discretion in declining to find that such testimony amounted to inadmissible "bad acts" evidence, because such evidence was probative of motive and intent, and was not introduced merely to establish the defendant's propensity toward committing crimes. Id.
 
 
 18
 Under the case law, it is clear that the district court, in the proceedings below, did not abuse its discretion in allowing the government to present evidence regarding the nature of the grand jury investigation into Gartman's alleged involvement in an insurance fraud scheme. Because such evidence was of direct relevance to Gartman's motive and intent to intimidate Gregory from testifying, and because such evidentiary decisions were soundly within the trial court's discretion, the district court's evidentiary rulings were not erroneous.
 
 
 19
 In the proceedings below, the government presented to the jury evidence that a federal grand jury had been investigating members of the Gartman family, including Gartman himself, on allegations of insurance fraud. The jury additionally heard evidence regarding two particular examples of Gartman's involvement in such fraudulent activities. The first occurred when Gregory, the witness-victim, told Gartman that she wanted to sell her c