{¶ 93} On this appeal from a jury verdict and judgment of conviction entered by Judge Brian J. Corrigan, I dissent. While I agree that there was substantial evidence of Terrence Collymore's guilt, I disagree with the contention that the evidence was so overwhelming that the inadmissible hearsay testimony was harmless beyond a reasonable doubt. I also disagree that the jury could have convicted Collymore of aggravated murder without the inadmissible evidence. In addition, the other acts testimony was inadmissible because it was not sufficiently probative of identity.
 {¶ 94} As the majority states, the judge admitted hearsay evidence beyond that allowed by the Ohio Supreme Court in State v. Apanovitch.[1]
The judge not only admitted evidence that the victim, Amy Rackliffe, had expressed fear of Collymore, but that she had told her friends that Collymore had once grabbed her throat and threatened to kill her if he caught her with another man. The judge also allowed evidence that she told a friend that Collymore had bruised her neck and arm as a signal to other men to stay away from her.
 {¶ 95} There was strong evidence against Collymore, including the fact that at about 2:30 p.m. on the day of Rackliffe's death he attempted to cash a paycheck issued to her, that he lied to detectives during questioning, that he changed his story concerning his whereabouts, and that a neighbor testified to seeing his car parked near Rackliffe's house on the morning of her murder. There was, however, some question concerning the neighbor's credibility because he did not disclose his friendship with Rackliffe's ex-husband or the fact that he had agreed to "keep an eye on" Rackliffe in the ex-husband's absence. Despite the other evidence of Collymore's guilt, the neighbor's testimony concerning the car was critical because it placed Collymore at Rackliffe's home on the morning of her death.
 {¶ 96} I cannot find, beyond a reasonable doubt, that the improper testimony concerning Collymore's violent behavior and threats did not affect the jury's ultimate determination of the neighbor's credibility and Collymore's guilt. The improper evidence reasonably could sway a jury toward accepting the neighbor's testimony when it might not have reached the same conclusion otherwise. Furthermore, the State presented testimony from a jailhouse informant who claimed that Collymore admitted committing the murder, although the informant was unable to provide any specific information concerning the time, place, or circumstances of the admission, and he failed even to provide more than a general paraphrasing of the alleged admission. The improper evidence also was likely to decrease scrutiny on the informant's credibility.
 {¶ 97} The majority recognizes that error affecting constitutional rights must be found harmless beyond a reasonable doubt,[2] but misapplies the standard here. The reasonable doubt standard is intended to reflect and preserve the importance of constitutional rights and ensure that judges recognize the gravity of error affecting those rights. Even where strong evidence points to the defendant's guilt, erroneously admitted evidence is not harmless beyond a reasonable doubt unless the other admissible evidence is so overwhelming that the jury could not reasonably reach any other conclusion, or if there is some other factor showing that the jury did not consider the tainted evidence.[3]
 {¶ 98} The hearsay testimony of Collymore's prior choking incidents and threats against Rackliffe was both powerful and highly prejudicial, and without any indication otherwise it is appropriate to assume the jury considered the evidence in arriving at its verdict. Because the improperly admitted evidence made the credibility determinations concerning other witnesses less critical to the jury's verdict, one cannot say, with the certainty required, that the jury would have reached the same verdict without that evidence. Therefore, the error is harmless only if the other admissible evidence provides "overwhelming proof of guilt."[4]
 {¶ 99} Because the neighbor's testimony placed Collymore at the scene near the time of the murder, it was important as a means to link the remaining circumstances to the inference of guilt. If the stability of this link was in question, a reasonable jury could have returned a not guilty verdict because the remaining evidence does not conclusively establish Collymore's guilt. Moreover, even if the majority believes it appropriate to adopt a wholly new rule of law that "prior calculation and design" can be proven by the act of strangulation itself,[5] this evidence cannot be considered "overwhelming proof" of that element. Therefore, even if one believes there was overwhelming evidence that Collymore was guilty of murder, there is no such evidence to show his guilt of aggravated murder.
 {¶ 100} In addition to the hearsay testimony, the judge allowed another witness to testify that Collymore had once choked her and tied her up with duct tape because he believed she had been unfaithful to him. Evid.R. 404(B) prohibits evidence of a defendant's specific acts if offered to show a propensity to commit a crime, but allows such evidence if offered for another purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." While we review the judge's rulings for abuse of discretion,[6] that discretion is subject to the strict construction of Evid.R. 404 against admitting character evidence.[7]
Because Evid.R. 404(B) prohibits evidence of other acts when used to show that the defendant "acted in conformity therewith" the evidence must be relevant for another purpose, and only if that purpose can be inferred from the other acts without first inferring a propensity to commit the act alleged.[8] The evidence is inadmissible when the allowable purpose cannot be inferred without first inferring that the defendant acted in conformity with his character trait or propensity. Moreover, other acts evidence always carries a potential for unfair prejudice because, once admitted, it might be considered for improper purposes even though offered for an allowable purpose. Therefore, analysis of evidence under Evid.R. 404(B) is not complete until the judge balances its probative value against its unfairly prejudicial effect.[9]
 {¶ 101} When properly used, modus operandi evidence proves identity by showing a commonality between similar acts that is so unique as to make the acts distinct and identifiable with the defendant.[10]
Although such evidence also has the potential for improper use because it shows the defendant's propensity for crime, it is potentially admissible because the inference of identity does not arise from the inference of general propensity, but from the inference of commonality between the specific events. Nevertheless, the distinction between the inferences of propensity and commonality is not always clear; therefore, the standard for admitting similar acts to prove identity requires a showing of an unmistakable "behavioral fingerprint."[11] Because Evid.R. 404(B) is interpreted liberally in favor of defendants,[12] "[t]he inference of commonality must be so strongly probative of identity that it outweighs the unfairly prejudicial effect of the propensity inference."[13]
 {¶ 102} The act of choking a victim, without more, should not establish a modus operandi sufficient to show a defendant's identity. The majority claims, however, that Collymore showed a distinct pattern of choking women when angry. The two factors added to the act of choking — the victims' gender and the defendant's supposed anger — are hardly unique in a society plagued with incidents of domestic abuse. Furthermore, the admissible evidence by no means establishes that the murderer acted out of anger instead of larcenous intent. Even if the majority considered this factor as within the judge's discretion, it nevertheless affects the verdict's stability and, therefore, further shows that the finding of harmlessness on the Apanovitch claim is incorrect. I also disagree with the majority's conclusion that the "prior calculation and design" necessary to prove aggravated murder can be proven by evidence of the strangulation alone. The majority concludes that the three to five minutes necessary to cause Rackliffe's death were sufficient to infer Collymore's prior calculation, but there is no authority or reason to support this view. Without more persuasive argument I cannot fathom how prior calculation and design can occurduring the act that results in death.[14] Regardless of whether prior calculation, a standard the majority concedes is more stringent than a showing of purpose or premeditation,[15] is ordinarily a factual question unsuited for "bright-line" determination, there is a point where the evidence falls below the threshold necessary to prove the element as a matter of law.[16] Furthermore, even though the Ohio Supreme Court has not ruled out short periods of deliberation as sufficient to establish prior calculation, there is no precedent for the rule the majority announces here.[17] In addition, even if one analyzes the three factors mentioned in Taylor,[18] the admissible facts here show only a strained relationship between Rackliffe and Collymore; one must engage in improper speculation to construe the other two factors against him.
 {¶ 103} Finally, and as already noted, the weakness of the State's evidence on prior calculation and design defeats the finding of harmlessness on the Apanovitch claim. Even if the majority believes the admissible evidence was sufficient to support this element, the improperly admitted evidence cannot be discounted as a factor in the jury's verdict.
 {¶ 104} I would sustain Collymore's first, third, and fifth assignments of error, find the remaining assignments moot, and remand for further proceedings.
[1] (1987), 33 Ohio St.3d 19, 21, 514 N.E.2d 394. Although Collymore has not raised the issue, I note that Apanovitch contemplates that such hearsay testimony will also be found relevant to some issue in dispute before being admitted. Id. at 21-22 ("When the state of mind is relevant it may be proved by contemporaneous declarations of feeling or intent.").
[2] State v. Griffin (2001), 142 Ohio App.3d 65, 79, 753 N.E.2d 967.
[3] Id. at 79-80.
[4] State v. Sutherland (1994), 92 Ohio App.3d 840, 849, 637 N.E.2d 366, citations omitted.
[5] The State's proof of prior calculation and design will be discussed in more detail below.
[6] State v. Lowe, 69 Ohio St.3d 527, 532, 1994-Ohio-345,634 N.E.2d 616.
[7] Id. at 533; State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus.
[8] Park, Leonard Goldberg, Evidence Law (1998) 172, Section 5.22; 1 Imwinkelried, Uncharged Misconduct Evidence, (Rev.Ed. 2001), 4-3, Section 4.01.
[9] United States v. Clark (C.A. 6, 1993), 988 F.2d 1459, 1465.
[10] Lowe, 69 Ohio St.3d at 531-532.
[11] Id. at 531.
[12] Id. at 533.
[13] State v. Crotts, Cuyahoga App. No. 81477, 2003-Ohio-2473, at ¶ 32.
[14] See State v. Cotton (1978), 56 Ohio St.2d 8, 11, 10 O.O.3d 4,381 N.E.2d 190 (former requirement of premeditation required that "the malicious purpose be formed before the homicidal act").
[15] Id. at paragraph one of the syllabus.
[16] State v. Taylor, 78 Ohio St.3d 15, 20, 1997-Ohio-243,676 N.E.2d 82.
[17] Id. at 19-20 (reviewing cases); cf. Cotton, supra.
[18] Id. at 19.