**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William J. VANDETTI,**
**Defendant-Appellant.**

**No. 79–5406.**

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1980.

Decided June 18, 1980.

Edward G. Drennen, II, Florence, Ky. (court-appointed), for defendant-appellant.

Patrick H. Molloy, U. S. Atty., James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before ENGEL, BROWN and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Appellant William J. Vandetti was indicted with six codefendants and charged with conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Appellant, who was not arraigned until the trial of the codefendants was in progress, was tried and convicted in a separate trial. On appeal he raises three issues: (1) whether it was prejudicial for the prosecutor to call his convicted codefendants as witnesses knowing that they would all assert their fifth amendment privileges and to require them to testify to the fact of their convictions; (2) whether there was error in admitting evidence of the relationship between one of the witnesses and certain codefendants; (3) and whether the evidence was sufficient to support the jury verdict. It is the opinion of this Court that the conviction must be reversed and remanded for a new trial on the basis of the first issue.

Vandetti was accused of violating § 1955 by acting as a doorkeeper and dealer at an after-hours gambling establishment. There was testimony that the operation opened for business at least several nights a week

at approximately 2:00 A.M. and closed about 5:00 A.M. Although it did not have a liquor license, the establishment maintained a bar and patrons were served by either a bartender or a waitress. There were two games, in which not all patrons participated, blackjack and seven-card stud poker. Each game was dealt by a house dealer. Various witnesses testified to having visited the business over at least a two-month period, from approximately August to October 1977, and to having seen varying numbers of patrons, with the greatest number on the weekends. For the most part, the testimony at Vandetti's trial was the same as that at the trial of his codefendants, except that information relevant to his particular role was emphasized.

The evidence at Vandetti's trial did differ in one material aspect from that in the previous trial: his codefendants were called to testify by the prosecutor. Before the trial, the District Court conducted a hearing on the issue of whether the codefendants could properly be called to testify in Vandetti's trial. Vandetti's attorney objected to these witnesses being called on the grounds that the submission of any evidence from the codefendants would be cumulative, since there was more than enough evidence from the prior trial in which the codefendants were convicted to prove the government's case, and that the effect would be solely to prejudice the jury. (Hearing Tr. 11–12). He argued that under the circumstances the government should have to show some prejudice resulting from not calling these witnesses. (Hearing Tr. 17). The government took the position that the defendants had no fifth amendment testimonial privilege once they had been convicted by a verdict of guilty. It further asserted a need for their testimony since they would have relevant knowledge and that it would be prejudicial to the government if the jury did not know why they were not called to give testimony (Tr. 10). At the hearing, all of the codefendants stated unequivocally through their attorneys that they would claim their fifth amendment privileges and would not testify. Their refusal was based on their continuing

liability for state prosecution under either gambling or liquor license laws and the fact that their federal convictions were on appeal and could result in further trial if there were a reversal. Thereupon, the trial judge made a finding that all of the defendants would take the fifth. (Hearing Tr. 7). He later modified his finding to suggest that the codefendants might change their minds at the last minute. (Hearing Tr. 11). The trial judge held that the government could call the witnesses to ask them their names, addresses, and a few questions (Hearing Tr. 15), since the codefendants were eyewitnesses and prejudice would naturally follow from not being able to call them. (Hearing Tr. 17–18).

 During oral argument before this court, the government asserted that the appellant had waived any objection to the testimony of the witnesses by failing to object at trial. The record, however, fails to disclose such waiver. Rather, it demonstrates continuous vigorous objection. There can be no doubt that the appellant's position on the matter was effectively brought to the trial court's attention. There was no need to continue to object after the judge's decision. *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934 (1965). Nevertheless, the defendant's attorney did renew his objections.

At the trial, the first witness, an undercover agent, testified at length about his visits to the gambling establishment. Several of the codefendants were brought into the courtroom briefly during his witness' testimony to be identified as conductors of the business. Their identity was relevant since whether the gambling business involved five or more persons and was in continuous operation in excess of thirty days, two elements of a § 1955 violation, were hotly contested issues. The prosecutor then proceeded to call the codefendants. The trial judge required each codefendant to answer questions with respect to his identity and whether he was convicted in the earlier trial. In addition the prosecutor asked additional questions to which they

took the fifth amendment. During the first codefendant's testimony, the trial judge gave a cautionary instruction on the right to claim a fifth amendment testimonial privilege after the witness refused to answer whether he knew William Vandetti. (Tr. 93). The instruction was enlarged to apply to the other codefendants as well.

■ This court has permitted the practice of calling a witness who will assert his fifth amendment privilege where "the prosecutor's case would be seriously prejudiced by a failure to offer him as a witness." *United States v. Kilpatrick*, 477 F.2d 357 (6th Cir. 1973).[1] In that case there were three persons involved in the illegal transaction, the defendant, an agent, and the witness who asserted his fifth amendment privilege. The Court quoted with approval from its holding in *United States v. Compton*, 365 F.2d 1, 5 (6th Cir.), *cert. denied*, 385 U.S. 956, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966):

> "Government counsel need not refrain from calling a witness whose attorney appears in court and advises court and counsel that the witness will claim his privilege and will not testify. However, to call such a witness, counsel must have an honest belief that the witness has information which is pertinent to the issues in the case and which is admissible under applicable rules of evidence, if no privilege were claimed."

*Kilpatrick, supra,* at 360.

■ This court has cautioned, however, that it is a practice so imbued with the "potential for unfair prejudice" that a trial judge should closely scrutinize any such request. *United States v. Maffei*, 450 F.2d 928, 929 (6th Cir. 1971), *cert. denied*, 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138

(1972). In the most extreme case, presentation of such a witness is obviously unfair, as when there is extensive questioning after the prosecutor knew that the privilege would be asserted. *United States v. Mayes*, 512 F.2d 637, 650 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). Unless we are to depart from these earlier decisions, merely permitting the codefendants to be called as witnesses was not error. We find error, however, in admitting their testimony that they were convicted at the prior trial of conducting this illegal gambling business.

To determine whether this testimony was relevant the court must first decide what was adjudged by the verdict in the prior case. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). The fact that a jury found that persons indicted with appellant Vandetti were guilty is not relevant to a determination of appellant's guilt. It has no tendency to make the existence of that guilt more probable or less probable than it would be without the evidence. Their conviction is not an element of the crime. To establish his guilt, the government was required to prove that at least four other persons, in addition to Vandetti, were engaged in the illegal gambling business. The jury might well have erroneously concluded that element was proved by the codefendants' prior convictions. As stated by the Supreme Court in *Kirby v. United States*, 174 U.S. 47, 60, 19 S.Ct. 574, 578, 43 L.Ed. 890 (1899) (dictum):

> "As proof of the *fact of conviction*, the record [of conviction] would be admissible and conclusive, but it seems not to be admissible of the *guilt* of the convict, as against another person charged with being connected with him in crime, the rec-

---

1. Most of the circuits have held that it is not error for the judge not to permit such a witness to testify. *See, e. g., United States v. Stulga*, 584 F.2d 142 (6th Cir. 1978); *United States v. Beechum*, 582 F.2d 898, 909–10 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978); *United States v. Yuraso-*

*vich*, 580 F.2d 1212 (3d Cir. 1978); *United States v. Reese*, 561 F.2d 894 (D.C.Cir. 1977); *United States v. Pierce*, 561 F.2d 735 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978); *United States v. Martin*, 526 F.2d 485 (10th Cir. 1975); *United States v. LaCouture*, 495 F.2d 1237, 1240 (5th Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); *United States v. King*, 461 F.2d 53, 56–57 (8th Cir. 1972).

ord being in this respect *res inter alios acta.* It is evidence that a certain person, named in the record, was convicted by the jury, but not evidence as against a third person, supposed to have been engaged with him in a particular transaction, as to the *ground* on which the conviction proceeded, *namely,* that the convict committed the criminal act described in the record."

The jury's verdict that the codefendants were guilty is a hearsay statement. The exceptions to the hearsay rule provide for the admissibility of a final judgment of guilty as to a felony, "but not including, when offered by the Government for purposes other than impeachment, judgments against persons other than the accused." F.R.Evid. 803(22). The Advisory Committee noted that "the exception does not include evidence of the conviction of a third person, offered against the accused in a criminal prosecution to prove any fact essential to sustain a judgment of conviction. A contrary position would seem clearly to violate the right of confrontation." To be admissible, this hearsay evidence of conviction must be admissible under some other rule. F.R.Evid. 802. As far as can be told from the transcript, however, the fact of the convictions appears to have been offered for no other reason than to prove the convictions. *See Great Lakes Gas Transmission Co. v. Grayco Constructors, Inc.,* 506 F.2d 498, 503 (6th Cir. 1974), *cert. denied,* 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 426 (1975). No other basis for offering them being asserted by the prosecutor, they are thus inadmissible. Because the convictions may sway the jury to find that the gambling operation was an illegal gambling business and that five or more persons were involved, we cannot find that the admission of the testimony was harmless error.

Although prohibited from asking about the convictions, the government may desire to call the codefendants on Vandetti's retrial. The District Court will then face the question of whether they may be called where the only evidence which foreseeably can be elicited will be their identity and the fact that they refuse to answer any questions regarding appellant Vandetti or the gambling business. There are two constitutional problems which may arise when a witness is presented who refuses to testify relying upon the fifth amendment privilege. The first problem is that such a witness permits the party calling the witness to build its case out of inferences arising from the use of the testimonial privilege, *Namet v. United States,* 373 U.S. 179, 186, 83 S.Ct. 1151, 1154, 10 L.Ed.2d 278 (1963), a violation of due process. "Neither side has the right to benefit from any inferences the jury may draw from the witness' assertion of the privilege alone or in conjunction with questions that have been put to him." *United States v. LaCouture,* 495 F.2d 1237, 1240 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974). Nevertheless, although guilt is not properly inferable from the exercise of the privilege, it is feared that its assertion in the presence of the jury may have a disproportionate effect on its deliberations. *Bowles v. United States,* 439 F.2d 536, 541 (D.C.Cir. 1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). Even though a cautionary instruction may be useful, *see Namet v. United States, supra,* it may not be sufficiently ameliorative in all cases. Advisory Comm.Note to F.R.Evid. 105.

Second, calling such a witness encroaches upon the right to confrontation. *Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965). Inferences from such a refusal may "add critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudic[e] the defendant." *Namet v. United States, supra,* 373 U.S. 187, 83 S.Ct. 1155. The probative value of this sort of testimony is almost entirely undercut by the impossibility of testing it through cross-examination. *Bowles v. United States, supra.* Certainly, the Supreme Court has long been concerned with placing before the jury evidence lacking indicia of trustworthiness which was obtained by violating the right of confrontation. *See Kirby v. United States,* 174 U.S. 47, 54, 19 S.Ct. 574, 576, 43 L.Ed. 890 (1899).

Despite the constitutional problems, trial courts have a legitimate practical concern for the factfinder's need to operate with as much relevant information as possible. However, because of the prejudice which may result to a defendant from inferences which may be drawn if a witness takes the fifth amendment, the trial judge must weigh a number of factors in striking a balance between the competing interests. *Eichel v. New York Central R. Co.*, 375 U.S. 253, 256, 84 S.Ct. 316, 318, 11 L.Ed.2d 307 (1963) (concurring in part).

> When a balance of this sort has to be struck, it should, except in rare instances, be left to the discretion of the trial judge, subject to review for abuse. See Uniform Rules of Evidence, Rule 45; Model Code of Evidence, Rule 303. It is he who is in the best position to weigh the relevant factors, such as the value of the disputed evidence as compared with other proof adducible to the same end and the effectiveness of limiting instructions.

The judge must determine whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice. F.R.Evid. 403. The possible prejudice in this case is enhanced by the fact that there are six individuals who could be expected to take the fifth amendment. The cumulative effect has "the potential for unfair prejudice."

This circuit's earlier decisions were reached without the benefit of the Federal Rules of Evidence. However, analysis of the admissibility of such testimony now requires consideration of the rules. They provide that relevant evidence is only presumptively admissible. It may be excluded if its probative value is substantially outweighed by its potential for introducing unfair prejudice, confusion of the issues, or the needless presentation of cumulative evidence. F.R.Evid. 403. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Comm.Note to R. 403. In the usual case involving this sort of witness, such an event is one which a jury must either ignore or give some probative weight to, although it is entitled to none in the law. If it does the former, no fact in issue is made more or less probable. If the latter, then there arises a real danger that the invocation of the fifth amendment in the presence of the jury may be given undue weight, *Bowles, supra*, at 541, particularly when, as here, it is done by such a large number of admittedly associated individuals. Where the potential for such unfair prejudice exists, the court should consider whether there is other evidence with more probative value and with less likelihood of unfair prejudice. *Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (per curiam). In this case, it is clear that other adequately probative evidence does exist based on the fact that in the earlier trial that evidence caused all of the codefendants to be convicted. Thus any testimony which the codefendants could give but for their privileges is likely to be cumulative to that given by other witnesses at both trials.

Also to be weighed is the government's obligation to prove the jurisdictional prerequisite of five or more people conducting a gambling enterprise and concomitant need to prove the identity of the participants. Where identity is an issue it may be proved in a number of ways, and several were employed in this case. It is possible to have a witness testify about the involvement of another person solely by name without corroboration through physical identification. The drawback of this method is that the witness may be mistaken or the jury may suspect that the identification is uncertain. A second means of proving identification is to show the witness pictures of the person, a method used by the government in this case with some witnesses. There may be instances, however, in which a witness could not make an adequate identification from a picture but could if allowed to observe the person's demeanor and carriage. A third method of identification, and the method used here with the first witness, is to have the witness identify a person who is brought into the courtroom for that purpose.

This latter method, however, will raise in the jury's mind the question why the person identified in the courtroom does not then testify. Some courts have suggested that any prejudice to the government arising from the absence of a witness, who, if called, would assert his fifth amendment privilege, can be dissipated by an instruction that the witness is not available to either side and that no inferences about his testimony may be drawn by the jury. *Bowles v. United States, supra.* However, if the witness is present and such an instruction is given, the jury cannot but be confused by it, since they know the person has been present in the courtroom. If the judge goes further and explains that, although present, the witness is unavailable for questioning since he would assert his fifth amendment testimonial privilege, the jury may be led to draw inferences of the witness' guilt. This situation may create serious problems of prejudice for either side but may be less prejudicial than having the witness personally refuse to answer.

 On remand, the trial judge should determine whether it is necessary to have the codefendants physically present in the courtroom for the purpose of identification. If he determines that it is necessary, then he may in his discretion permit the witness to testify that he is unwilling to testify. If it is clear the witness is unwilling to testify, that fact is the only relevant testimony beyond identity the witness can give, and continued questioning cannot be for the purpose of eliciting relevant testimony but only for the purpose of creating prejudice. The trial judge may wish to require the questions be phrased in such a way as to avoid using the words "I take the fifth amendment" in front of the jury. These words themselves have acquired a connotation that is tantamount to a plea of guilty before the jury. For example, the prosecutor may ask the witness his name and then may ask: "Are you willing to testify concerning your activities from August to October 1977?" If the witness' answer is *no*, then the prosecutor may go no further, and the judge may give an explanation that the witness has also been indicted and thus may not be required to answer any questions about the alleged crime.

 The appellant also objects to the submission of evidence of the relationship between one of the witnesses and the other codefendants. This evidence was submitted to explain to the jury why the witness had changed her testimony. Since the credibility of a witness is always relevant, F.R.Evid. 608, evidence of bias or prejudice may be submitted as probative of that issue.

Review of the record disclosed that the evidence was sufficient to support the jury's verdict.

Accordingly, for the reasons stated above, the action is reversed in part and remanded to the District Court for further proceedings consistent with this opinion. The District Judge is affirmed on the admissibility of the evidence on Cathy Cole's relationship with the codefendants.