STATE v. HARRIS

[139 N.C. App. 153 (2000)]

---

STATE OF NORTH CAROLINA v. JEROLD ALAN HARRIS

No. COA99-826

(Filed 18 July 2000)

**1. Constitutional Law— self-incrimination—codefendant not required to testify—offer of proof not submitted**

The trial court did not abuse its discretion in a robbery with a dangerous weapon and first-degree murder case by ruling that the codefendants could not be called to testify based on their invocation of their Fifth Amendment privilege against self-incrim-

ination, because: (1) defendant did not submit an offer of proof of the codefendants' testimony outside the presence of the jury so that the Court of Appeals could rule on the significance of the codefendants' testimony or the significance of their invocation of the privilege; and (2) defendant's testimony on his own behalf indicating his version of the incidents does not qualify as an offer of proof.

**2. Evidence— hearsay—unavailable witness—untrustworthy**

　　The trial court did not abuse its discretion in a robbery with a dangerous weapon and first-degree murder case by failing to conduct the six-part inquiry for the admission of hearsay statements as required by N.C.G.S. § 8C-1, Rule 804(b)(5) based on a codefendant's invocation of his Fifth Amendment privilege making him unavailable to testify, because the trial transcript reveals the trial court found the hearsay at issue to be untrustworthy under the third step of the required analysis, meaning failure to conduct further analysis under the other factors was not prejudicial.

Appeal by defendant from judgments entered 31 July 1998 by Judge Carl L. Tilghman in Hertford County Superior Court. Heard in the Court of Appeals 6 June 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James Peeler Smith, for the State.*

*Paul Pooley for defendant-appellant.*

HUNTER, Judge.

Jerold Alan Harris ("defendant") appeals his convictions for robbery with a dangerous weapon and first degree murder of Jimmy Andreson ("Andreson"). In his brief before this Court, defendant contends that the trial court abused its discretion in ruling that David Foreman ("Foreman") and Tyrone Dukes ("Dukes"), his codefendants, would not be called to testify without conducting the balancing test required by Evidence Rule 403, and in failing to conduct inquiry into hearsay statements which were excluded after the codefendants became unavailable. Defendant argues that these alleged errors require that he be given a new trial. We hold that defendant has failed to show prejudicial error by the trial court.

The State's evidence at trial relevant to the present appeal indicated that this case stems from incidents occurring the night of 20

December 1996. That evening, defendant, his neighbor "Buddy," Pamela Jacobs, Kelvin Futrell, Alicia Eason, Dukes and Foreman were at defendant's home. When Dukes told Foreman that he had seen Andreson "at the store" earlier in the evening, defendant proceeded to ask them if they wanted "to get" Andreson. Later in the evening, Andreson came to defendant's home and asked if Tim Baker lived there. Defendant came to the door and asked what Andreson needed. When Andreson responded that he wanted "crack," defendant invited him in, saying he had what Andreson wanted. Defendant called Dukes and Foreman to the back of the house for a discussion, and then told Andreson to come into defendant's bedroom.

While Andreson was in defendant's bedroom, Dukes took Andreson's car. He drove it down the road and left it. When Dukes returned to the house, Andreson was just coming out of defendant's bedroom. Looking out the front door, Andreson noticed his car was missing and asked where it was. Dukes and defendant told him they did not know about the car. Andreson continued to ask them where his car was located, and defendant then asked Andreson to leave the house. Defendant then struck Andreson in the face and Andreson fell to the floor. Defendant and Dukes searched Andreson's pockets, took his wallet, and then dragged him by his hair out of the house and down the front steps of the house and into the yard. When Andreson was lying in the front yard of the house, defendant, Dukes and Foreman kicked him and struck him with yard ornaments. Kelvin Futrell prevented defendant from beating Andreson with a baseball bat, but defendant did beat Andreson with an iron rod. When defendant's uncle came to the house, someone dragged Andreson to the side of the house. Andreson was moaning, falling against the side of the house, asking for help.

After defendant's uncle left, defendant, Dukes, Foreman and Kelvin Futrell went back outside. Dukes struck Andreson on the head with a broom handle. When Andreson passed out, defendant went into the house, got a five-gallon bucket of hot water, threw the water on Andreson to revive him, and continued to beat him. Later on, after the beating had subsided, Andreson tried to re-enter the house. Pamela Jacobs told Andreson to leave, that his car was down the road. Defendant and Foreman then ran out of the house and knocked Andreson off the steps and onto the ground. While Foreman held Andreson's head, defendant hit Andreson three times with a gin bottle. Defendant, Foreman and Dukes returned inside the house. Defendant went outside a few moments later, and then returned,

reporting that Andreson was dead. The testimony of Pamela Jacobs and Alicia Eason revealed that defendant remarked that he did not like white people, and Alicia Eason testified that defendant decided to kill Andreson for that reason. Both testified that all co-defendants took part in beating and robbing Andreson, but that defendant committed the final blows to Andreson, causing his death.

Contrary to the evidence presented by the State, defendant testified that when Andreson came to his home asking for drugs, defendant told him he could take Andreson to get some, but Andreson said that he had no money. Andreson started to leave, but came back and instigated a fight with defendant after he discovered his car was missing. Defendant further testified that Dukes then entered the house and told Andreson where his car was located, and that Dukes had taken the car and left it two miles from defendant's house, although defendant did not know why Dukes had done so. Andreson would not leave and continued fighting all three defendants. Defendant testified that in total, he hit Andreson once with his fist, twice with a bottle, twice with a long rod, and kicked him several times. However, defendant testified that co-defendant Foreman struck Andreson with a final blow to the head just before he died. A forensic pathologist testified that Andreson died of blunt trauma to the head.

Defendant was tried at the 22 June 1998 Criminal Session of Superior Court in Hertford County. He was convicted of robbery with a dangerous weapon and first degree murder. For the robbery conviction, defendant was sentenced to a term of 95 to 123 months, consecutive to life imprisonment without parole, his sentence for first degree murder. Defendant appeals.

[1] Defendant first contends that the trial court erred and abused its discretion in ruling that the co-defendants would not be called to testify due to the fact that they would invoke their Fifth Amendment privilege, without conducting the balancing inquiry required by Rule 403 of the North Carolina Rules of Evidence. Our Supreme Court has stated:

[T]here are two difficulties that may arise when a witness is presented and then refuses to testify by asserting his Fifth Amendment privilege. The first is that it permits the party calling the witness to build or support his case out of improper speculation or inferences that the jury may draw from the witness' exercise of the privilege, which cannot be adequately corrected by trial court instruction. The second concern is that it encroaches

upon the constitutional right to confrontation because the presentation of the exercise of the privilege cannot be tested for relevance or value through cross-examination. As a result of these difficulties, "the trial judge must weigh a number of factors in striking a balance between the competing interests." Such a balancing will be left to the discretion of the trial court in determining whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice in accordance with Rule 403 of the Rules of Evidence.

*State v. Pickens*, 346 N.C. 628, 639, 488 S.E.2d 162, 168 (1997) (citations omitted) (quoting *United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir. 1980)). In *Pickens*, the defendant wanted to call his co-defendant and show that the co-defendant fired the weapon that caused the victim's death. Outside the jury's presence, the co-defendant had exercised his Fifth Amendment privilege against self-incrimination. The Court held that the co-defendant's assertion of his Fifth Amendment privilege before the jury was "immaterial" because the defendant in *Pickens* was not tried for murder, but under a theory of acting in concert. *Id.* at 640, 488 S.E.2d at 168. Defendant argues that he "should at least have been able to compel his co-defendants to take the witness stand and assert their Fifth Amendment privileges in front of the jury." He contends the purpose of doing this would be to attempt to elicit testimony concerning material facts, or, if the witnesses refused to testify, it would avoid prejudice to his case as he offered the co-defendants as witnesses in light of their roles in the incident.

Our Supreme Court has held that "whether an objection be to the admissibility of testimony or to the competency of a witness to give that, or any, testimony, the significance of the excluded evidence must be made to appear in the record if the matter is to be heard on review." *Currence v. Hardin*, 296 N.C. 95, 99, 249 S.E.2d 387, 390 (1978). "An offer of proof under Rule 43(c) [now Rule 103(b)] must be specific and must indicate what testimony the excluded witness would give." *Id.* at 100, 240 S.E.2d at 390. In the present case, both co-defendants had been subpoenaed by the State and by defendant. The court had been advised by their counsel that they would refuse to testify, invoking their Fifth Amendment privilege. However, defendant did *not* submit an offer of proof as to their testimony outside the presence of the jury. Therefore, we cannot rule as to the significance of their testimony, or the significance of their invocation of their Fifth Amendment privilege, without an offer of the testimony defendant

hoped to elicit. While defendant's testimony on his own behalf indicates his version of the incident, it does not qualify as an offer of proof as to his co-defendants' testimony. Accordingly, this assignment of error is overruled.

[2] Next, defendant contends that the trial court erred and abused its discretion in failing to conduct the required inquiry into certain hearsay, and thereby excluding that hearsay which defendant sought to introduce after the co-defendants became "unavailable" by their exercise of their privilege against self-incrimination. The hearsay at issue is that which defendant proposed to introduce through Jacqueline Harris ("Harris") and Gilbert Ivey ("Ivey"). No offer of proof was made as to Harris's testimony; therefore, based on foregoing authority, we will only consider Ivey's testimony in this assignment of error. An offer of proof of Ivey's testimony indicated that he would testify that co-defendant Dukes had said that he, Dukes, took Andreson's car and went joy riding when the car broke down and that when he came back to defendant's house to get some help fixing the car, he found defendant, Foreman and Andreson in a fight, and

> the next thing he know [sic] they were all beating up on [Andreson].
>
> And he said that they were jumping on [Andreson] and stuff and that he kept telling me how they had that broom, big thick broom, not the little skinny ones, but the big ones. He kept telling me how David [Foreman] was hitting [Andreson] with the broom and stuff and making all kinds of sounds and faces.

Defendant argues that the trial court failed to make required findings and conclusions concerning this hearsay testimony.

Defendant in the present case submitted to the trial court and to the State a written notice of his intent to present hearsay substantially in the form required by Evidence Rule 804(b)(5). To admit testimony under this rule, the trial court must first determine that the witness is unavailable. *State v. Triplett*, 316 N.C. 1, 8, 340 S.E.2d 736, 740 (1986). Where a witness is physically present at the trial, but asserts his Fifth Amendment right not to testify, he is considered "unavailable" for the purpose of determining whether his prior recorded testimony may be admitted into evidence. *State v. Graham*, 303 N.C. 521, 523, 279 S.E.2d 588, 590 (1981). After determining that the witness is unavailable, the trial court must undertake the follow-

STATE v. HARRIS

[139 N.C. App. 153 (2000)]

ing six-step inquiry required for the admission of the testimony: Whether (1) proper notice has been given; (2) the hearsay is not specifically covered elsewhere; (3) the hearsay is trustworthy; (4) the hearsay statement is material; (5) the hearsay statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts; (6) the interests of justice will be served by the admission. *Phillips & Jordan Investment Corp. v. Ashblue Co.*, 86 N.C. App. 186, 190, 357 S.E.2d 1, 3, *disc. review denied*, 320 N.C. 633, 360 S.E.2d 92 (1987). In *Phillips v. Ashblue*, this Court held:

> The six-part inquiry is very useful when an appellate court reviews the admission of hearsay under Rule 804(b)(5) or 803(24). However, *its utility is diminished when an appellate court reviews the exclusion of hearsay.* Common sense dictates that *if proffered evidence fails to meet the requirements of one of the inquiry steps, the trial judge's findings concerning the preceding steps are unnecessary.*
>
> Although we are compelled to hold that the trial court erred by not making specific findings for each step in the six-part inquiry, the error did not prejudice defendant because the evidence would still have been excluded.

*Id.* at 191, 357 S.E.2d at 3-4 (emphasis added).

The trial transcript shows that the trial court found the hearsay at issue to be untrustworthy under step (3) of the required analysis. Therefore, error in failing to conduct further analysis under the other factors is not prejudicial. *Id.* Defendant does not assign error to the finding that the hearsay in question was untrustworthy. Accordingly, this assignment of error is overruled.

We have reviewed defendant's remaining assignment of error which he has presented in his brief and find it to be without merit. No other assignments of error were argued and are therefore deemed abandoned under N.C.R. App. P. 28, and we will not consider them.

No prejudicial error.

Judges GREENE and HORTON concur.