File Name: 08a0311n.06
Filed: May 30, 2008

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 06-4265**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| ERIC BALLARD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE and GRIFFIN, Circuit Judges; and FORESTER, Senior District Judge.[*]

PER CURIAM.

Defendant Eric Ballard appeals his conviction of felon in possession of a firearm (18 U.S.C. § 922(g)(1)), arguing that the district court erred in prohibiting him from calling his cousin Edward Sadler as a witness after Sadler indicated that he would invoke his Fifth Amendment privilege against self-incrimination. Ballard further argues the district court erred by refusing to advise the jury that Sadler had invoked his privilege. Because we conclude that the district court did not abuse its discretion in denying defendant's motions, we affirm the judgment of the district court.

---

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In the early morning hours of February 22, 2006, Officer Michael Anderson of the Youngstown, Ohio Police Department observed a blue Chevy Lumina run two red lights at a high rate of speed. Officer Anderson activated his patrol vehicle's lights and pulled the vehicle over in front of a home at 162 West Warren Avenue. After the vehicle stopped, the driver, later identified as defendant Ballard, exited the vehicle without being instructed to do so. Ballard walked around the rear of his vehicle and towards the sidewalk area in front of the house with his back to the officer. An individual in the front passenger seat of the vehicle, later identified as Edward Sadler, also exited the vehicle, raised his arms, and walked towards Officer Anderson. As Sadler was advancing towards him, Officer Anderson instructed Sadler to place his hands on the hood of the police cruiser. During his interaction with Sadler, Officer Anderson momentarily lost sight of Ballard who was in front of the 162 West Warren house. Officer Anderson instructed Ballard to approach and place his hands on the police cruiser, which he did.

After backup officers arrived, and Ballard and Sadler were secured, Officer Anderson searched the front yard of 162 West Warren. Based on Ballard's demeanor and actions, Officer Anderson believed that Ballard had hid something in the front yard area. Officer Anderson approached the area where he observed Ballard standing and noticed a nine-millimeter handgun lying in the grass eight feet away from him. Officer Anderson later testified that the gun was warm to the touch, even though it was a cold winter night. Noticing that the passenger window was rolled up,

and based on Ballard's prior actions, Officer Anderson concluded that the gun has been in Ballard's possession and arrested him for carrying a concealed firearm.

At trial, defendant called as witnesses Steve Gambetta, an investigator for the Federal Public Defender Service, and Al Palombaro, defendant's former counsel. Both witnesses testified, over the government's hearsay objection, that Sadler admitted to owning and possessing the weapon recovered on the evening of February 22, 2006. According to defendant's witnesses, Sadler stated that he threw the weapon from the window of the vehicle. Sadler's alleged admission contradicted his March 6, 2006, statements to ATF agents in which he denied possessing the handgun.

Defense counsel also attempted to call Sadler as a witness. However, upon discovering that Sadler intended to invoke his Fifth Amendment privilege against self-incrimination, the district court questioned Sadler outside the presence of the jury. Upon learning that Sadler would invoke his Fifth Amendment privilege, the district court refused to allow Ballard to call Sadler to testify. The district court also denied defendant's motion that the jury be advised of Sadler's assertion of his Fifth Amendment privilege. In accordance with the government's motion, the district court instructed the jury that "[t]o the extent that individuals other than the defendant did not testify, you should not infer anything at all for or against either the government or the defendant because the individual did not testify." Ballard was ultimately convicted and sentenced to a term of 105 months imprisonment. This timely appeal followed.

II.

A district court's decision to allow a jury to hear a witness invoke his Fifth Amendment right "is within the sound discretion of the trial court and will not be reversed absent evidence of an abuse." *United States v. Clark*, 988 F.2d 1459, 1464 (6th Cir. 1993) (citing *United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir. 1980)). "A district court has abused its discretion when a reviewing court is firmly convinced a mistake has been made." *Id*. (citing *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988)). This discretion is borne out of the fact that a jury is "not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." *Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970). *See also Vandetti*, 623 F.2d at 1147 (stating that allowing a privilege-asserting witness to take the stand is "so imbued with the 'potential for unfair prejudice' that a trial judge should closely scrutinize any such request.") (quoting *United States v. Maffei*, 450 F.2d 928, 929 (6th Cir. 1971)); *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973) ("If it appears that a witness intends to claim the [Fifth Amendment] privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him.") (citing *Namet v. United States*, 373 U.S. 179, 186 (1963)).

Defendant argues that the prohibition against the jury drawing inferences from a privilege-invoking witness exists solely to protect the rights of the accused. He contends that when the privilege against self-incrimination is not applicable, silence in the face of accusation becomes

relevant. Ballard asserts that because the present situation does not implicate his privilege against self-incrimination, Sadler's invocation of the Fifth Amendment privilege is admissible evidence from which the jury should be able to draw negative inferences.

With regard to Ballard's first point, we are not persuaded that a defendant should be permitted to call a privilege-asserting witness to the stand for the sole purpose of allowing a jury to draw negative inferences of culpable conduct, while simultaneously maintaining that the same maneuver by the prosecutor would constitute a constitutional violation. Under defendant's reasoning, inferences of guilt derived from the invocation of a witness's Fifth Amendment privilege are permissible only insofar as they lead to a defendant's acquittal. Such a lopsided rule would contravene the well-settled principle that both the government, as well as the defendant, are entitled to a fair trial. *United States v. Ford*, 830 F.2d 596, 603 (6th Cir. 1987) (Krupansky, J., concurring) (observing that "existing legal precedent defines the Sixth Amendment right to a fair and impartial trial as a right that inures not only to the sole benefit of a defendant, but rather one that inures equally to the state as the representative of the people."); *see also United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969) (noting "the concept of a fair trial applies both to the prosecution and the defense").

Moreover, allowing a privilege-invoking witness to testify requires a balancing of potential prejudice. When a defendant calls a witness to the stand with the understanding that the witness will assert his Fifth Amendment privilege, it becomes impossible to determine whether the privilege is asserted to obfuscate the factfinder or whether it is invoked out of a genuine desire to avoid self-

incrimination. Although witnesses can only invoke their Fifth Amendment privilege "where it is 'grounded on a reasonable fear of danger of prosecution,'" *United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999) (quoting *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998)), and a witness "cannot meet the reasonable fear-of-prosecution prong by simply making a blanket assertion of the privilege," *id*., because such a witness cannot be examined or cross-examined, the jury proceeds through inferences and therefore there exists no explicit statements from which the witness may be held accountable. This, coupled with the fact that the jury may draw an improper inference of guilt from the witnesses's invocation of silence, creates potential for collusion between the witness and defendant. It is particularly problematic when the defendant and witness have a personal or familial relationship, such as the relationship shared by Ballard and Sadler here. This potential for prejudice against the government warrants the district court's discretionary role in allowing or disallowing privilege-asserting witnesses from taking the stand.

Also unconvincing is defendant's second argument that he should be able to call Sadler to the stand to dispel the jury's inference of guilt that would result if Sadler were not called. This argument first assumes that the jury has made such an inference; there is, however, no evidence in the record to support this assumption. Furthermore, the district court properly informed the jury that they were to draw no inferences, either for or against the defendant, on the basis of Sadler's failure to testify. Defendant contends that the government is "routinely" permitted to call privilege-invoking witnesses to the stand. Although we recognize that "[t]his court has permitted the practice of calling a witness who will assert his fifth amendment privilege where 'the prosecutor's case would

be seriously prejudiced by a failure to offer him as a witness,'" *Vandetti*, 623 F.2d at 1144 (quoting

*United States v. Kilpatrick*, 477 F.2d 357 (6th Cir. 1973)), we are not firmly convinced that the

district court made a mistake in balancing the prejudice to Ballard against the prejudice to the

government.

We hold that the district court did not abuse its discretion in denying Ballard the opportunity

to call Sadler to the stand and denying defendant's proposed jury instruction that Sadler invoked his

Fifth Amendment privilege.[1]

III.

For the reasons set forth above, we affirm the judgment of the district court.

---

[1]Federal Rule of Appellate Procedure 28(a)(5) requires the appellant's brief to contain "a statement of the issues presented for review . . . ." Issues that are not presented in accordance with this rule are not preserved. *See United States v. Baylor*, 517 F.3d 899, 903 (6th Cir. 2008). In a footnote of his brief, defendant improperly attempts to raise an additional issue, specifically, that the district court erred in instructing the jury on a theory of constructive possession when there was no evidence to support such a theory. Defendant, however, admits that our holding in *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995), renders this alleged error harmless as a matter of law. Ballard states that he has raised this argument solely for the purposes of preservation. As the issue was not presented in accordance with Rule 28(a), we hold the argument is not preserved.