NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0882n.06

No. 08-5461

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| SHELBY J. COLEMAN, | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     DAUGHTREY, COLE, and ROGERS, Circuit Judges.

COLE, Circuit Judge.  Shelby Coleman, the Defendant-Appellant, appeals her jury conviction of two counts of violating 18 U.S.C. § 666 for stealing, embezzling, and otherwise defrauding her employer, the Johnson County Board of Education.  She argues that the district court abused its discretion when it excluded the testimony of Coleman's co-Defendant, Peggy VanHoose, after VanHoose repeatedly invoked her Fifth Amendment privilege in response to the prosecution's questions on cross-examination.  We AFFIRM the judgment of the district court.

I.  BACKGROUND

Shelby Coleman was the payroll clerk for the Johnson County Board of Education for nineteen years.  In this capacity, she administered the payroll and issued checks to all employees of the Johnson County school system.  Coleman, along with her supervisor Peggy VanHoose, the finance director, controlled all aspects of the payroll software system, known as "MUNIS."

After the death of the school superintendent Orville Hamilton, the Board hired Stephen Trimble as Hamilton's replacement. One of Trimble's first acts as superintendent was to get a grasp on the school system's finances, and he requested an updated list of all employees' salaries from VanHoose. VanHoose previously furnished such a list to the Board, but her and Coleman's information was left off that list. Trimble submitted the new list to the Board, and some members suspected that Coleman and VanHoose's information was incorrect.

Trimble then contacted the Kentucky Department of Education, which also kept records on Kentucky school system employees' salaries. The information from the state agency alerted Trimble to possibly fraudulent behavior. The list VanHoose gave to Trimble did not include her son, Michael, who did appear on the state's payroll list. VanHoose also appeared to be receiving a full salary and retirement benefits at the same time. The most concerning indication of fraud was that VanHoose and Coleman's salaries on the list given to Trimble were substantially less than the amount the state agency reported that they earned. Trimble notified members of the school board and turned the information over to the state police, the Commonwealth Attorney, and the state Department of Education.

A federal grand jury jointly indicted Coleman and VanHoose on two counts of violating 18 U.S.C. § 666, and separately indicted VanHoose on two additional counts of violating 18 U.S.C. § 666. Count 1 alleges that Coleman and VanHoose issued money in excess of $5,000 to Michael VanHoose at times when they knew that he was not an authorized employee of the Johnson County School District. Count 2 alleges that Coleman and VanHoose arbitrarily, and without authority, gave themselves substantial pay raises in excess of $5,000.

The district court granted Coleman and VanHoose's motion to sever their trials. VanHoose pleaded not guilty, and after a five-day trial, a jury convicted her of three of the four counts. Coleman, during her jury trial, sought to call VanHoose as a defense witness, but the district court noted that "there is a question that was raised as to whether or not [VanHoose] would seek to invoke a Fifth Amendment privilege as it relates to her testimony."

Coleman's attorney informed the district court that he expected VanHoose to testify "that Ms. Coleman did nothing knowingly wrong," and merely "followed the directives of the supervisor." Moreover, that even though Coleman issued checks to Michael VanHoose while he was actually in jail, she "wasn't aware of the water cooler talk about [Michael VanHoose's] problems . . . [and] she believed that he was on a work release program." After hearing argument on whether VanHoose waived her Fifth Amendment rights by testifying in her own trial, the district court, outside the presence of the jury, permitted a voir dire of VanHoose.

During VanHoose's direct testimony during the voir dire, she answered questions on whether Coleman ever knowingly assisted her in stealing funds from the Johnson County School Board; whether Michael VanHoose had been incarcerated and whether she discussed his legal problems generally, or with Ms. Coleman specifically; whether Coleman ever received a raise, and more generally, how other employees within the school district received raises; and whether Coleman worked overtime, and whether there was paperwork that VanHoose reviewed when approving her overtime. VanHoose invoked her Fifth Amendment right against self-incrimination numerous times on direct, in response to questions about whether Coleman assisted in embezzling funds to VanHoose's son; whether VanHoose told Coleman that her son was in a work-release program; and

- 3 -

whether VanHoose approved the overtime Coleman worked. Coleman's counsel twice asked VanHoose whether she approved Coleman's overtime hours. She answered it once and invoked her Fifth Amendment rights the second time it was asked.

On cross-examination, the prosecution asked a number of questions to which VanHoose responded by invoking her Fifth Amendment rights: whether VanHoose went into the MUNIS system, under Coleman's username, to manipulate her or Michael VanHoose's salary information; whether VanHoose was trying to protect Coleman; whether VanHoose embezzled money from the Johnson County School District; and whether VanHoose awarded herself sick days to which she was not entitled. The prosecution argued that it would be severely hampered if VanHoose were permitted to answer questions posed by defense counsel, but was unamenable to cross-examination. Obviously, if VanHoose denied Coleman's involvement, but then invoked the Fifth Amendment in response to questions about her own complicity, the jury would be left with the impression that VanHoose's invocation was an admission of culpability.

The district court noted that if VanHoose had invoked her privilege in response to questions on collateral matters on cross-examination, the prosecution would not be prejudiced because it would still have the ability to cross-examine her on her direct testimony. Concluding that VanHoose invoked the privilege in response to questions within the scope of the direct examination on non-collateral matters, the district court barred VanHoose from appearing as a witness.

The jury convicted Coleman on both counts of violating 18 U.S.C. § 666, and the district court sentenced Coleman to twenty-seven months in prison and ordered her to pay $161,387.28 in restitution. Coleman filed her timely notice of appeal.

## II. ANALYSIS

Coleman asserts two arguments in support of her contention that the district court erred in excluding VanHoose's testimony in its entirety. First, she argues that VanHoose invoked her privilege only in response to questions outside the scope of the direct examination, so that the prosecution was in no way prejudiced, given the ample opportunity to cross-examine VanHoose on non-collateral matters. Second, Coleman argues that even if the exclusion prejudiced the prosecution, district courts may exclude privileged testimony only if its inclusion would prejudice the defendant. A district court's decision to admit or exclude evidence will be upset only if the district court abused its discretion. *See United States v. Baldwin*, 418 F.3d 575, 579 (6th Cir. 2005). Under this standard, we will reverse "only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Id.* For this to be the case, the district court must have relied "on clearly erroneous findings of fact, improperly applie[d] the law, or employ[ed] an erroneous legal standard." *Id.* (internal citations, quotation marks, and punctuation omitted).

The scope of the direct examination is construed broadly. *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990). The subject matter of the direct examination includes "all inferences and implications arising from such testimony" and, on cross-examination, the prosecutor may ask "any question which would have elicited testimony that *was reasonably related to the inferences* that

might reasonably be drawn from [the] direct testimony . . . ." *Id.* (emphasis added). Coleman argues that what the prosecution could not obtain because of VanHoose's assertion of the privilege was not substantially related to the scope of her direct examination. We cannot agree.

VanHoose testified during direct examination that Coleman never assisted her in embezzling funds from the school board. But, previous testimony demonstrated that there were some irregularities within the school system's accounting mechanisms, since the Board's records were different from the state agency's. After hearing testimony from VanHoose that Coleman did not commit illegal acts, a juror would wonder how these irregularities could exist, given that it was Coleman who administered the Board's payroll. Similarly, a juror would wonder how VanHoose could manipulate the MUNIS system without Coleman's knowledge. When the prosecution attempted to obtain an answer to this question during the voir dire, they were unable to do so because VanHoose invoked her right against self-incrimination.

This is not the only example. A computer expert's testimony revealed that someone had used the username "Shelby" on MUNIS to manipulate Michael VanHoose's payroll information. Again, had the jury heard from VanHoose that Coleman did not participate in any fraud, they would naturally wonder who, then, had used the system with that username. These are natural inferences, and Coleman's argument that the questions are somehow outside the scope of the direct examination strains credulity. Such a claim would unnecessarily hamper the scope of cross-examination to only the words and specific acts articulated during the direct examination, a position this Court has specifically rejected. *See Moore*, 917 F.2d at 222. We cannot say that the district court's

determination that the prosecutor's questions were within the scope of the direct examination was outside the range of reasonable conclusions.

District courts, Coleman insists, may bar a witness from testifying only if there is a substantial danger of prejudice arising from the *defendant's* inability to challenge the testimony. In support of this claim, she calls our attention to *United States v. Clark*, which states that "[i]t is up to the court to weigh the importance of admitting all relevant information versus the prejudice to the defendant and strike a balance between these competing interests." 988 F.2d 1459, 1464 (6th Cir. 1993) (per curiam) (citing *United States v. Vandetti*, 623 F.2d 1144, 1149 (6th Cir. 1980)). But *Clark* cannot possibly stand for the proposition that prejudice to the prosecution may never be considered when deciding whether to exclude a witness under the circumstances here. Were we to adopt such a theory, a bizarre conclusion would result. A defendant could elicit testimony from a witness on direct examination, that witness could then invoke his Fifth Amendment right *throughout* cross-examination, and because no prejudice would result to the defendant, but only to the prosecution, the district court would be unable to exclude the witness from testifying. Although the prosecutor's interest in cross-examining VanHoose is not rooted in the Constitution, "one of the legitimate demands of the adversary system is the right of cross-examination." *United States v. Gary*, 74 F.3d 304, 310 (1st Cir. 1996). The district court was within its discretion when it excluded VanHoose's testimony because its admission would unduly prejudice the prosecution.

## III. CONCLUSION

The prosecution's questions to VanHoose during cross-examination were material and not outside the scope of the direct examination, especially when considering the other testimony that had

been adduced and the inferences that jurors could then draw. And while the right to confront adversarial witnesses is constitutionally enshrined for defendants, we cannot say that a weaker iteration of that interest does not extend to the prosecution. The district court did not abuse its discretion when it determined VanHoose's testimony to be inadmissible. For the foregoing reasons, we AFFIRM the judgment of the district court.